Madison et al. *v.* Lewis, Appellant.

Argued October 13, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*A. G. Schneider,* with him *J. Harry Wagner,* for appellant.

*John Francis Williams,* for appellees.

OPINION BY KELLER, P. J., January 28, 1943:

This is an action of ejectment for an undivided half interest in property No. 26 S. Ruby Street, Philadelphia. The plaintiffs are the heirs at law of the sister and devisee of the deceased owner; the defendant is the devisee of the alleged husband of the deceased owner, who had elected to take against her will, and, in consequence thereof, claimed an undivided half interest in the real estate.

The case turns upon the validity of the marriage of the owner of the property to her alleged husband.

The case was tried by the court without a jury, under the Act of June 25, 1937, P. L. 2090, 12 PS §695, and resulted in a finding for the plaintiffs on which judgment was entered. See *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219. Defendant appealed.

The defendant offered no evidence. In view of the judge's finding for the plaintiffs, the testimony and the inferences to be drawn therefrom must be viewed in the light most favorable to them. The finding of the judge has the force and effect of the verdict of a jury and cannot be disturbed on appeal if there is evidence to support it: *Moore v. W. J. Gilmore Drug Co.,* 131 Pa. Superior Ct. 349, 200 A. 250.

The testimony, so considered, may be summarized as follows:

Pursuant to a marriage license duly issued November 23, 1891 by the proper authority in the District of Columbia, James Harris of Washington, D. C., appellant's devisor, and Sarah Jones, also known as Sadie Jones, of Georgetown, D. C., were married. That the minister who married them failed to make a *return* of the marriage in no way affected its validity. They lived together as husband and wife in Washington and Atlantic City, and later moved to Philadelphia where they con-

tinued to live together and were known and reputed as husband and wife. A daughter, Josephine, was born to them. In 1898 Sadie Harris left James Harris and went to New York, taking their daughter with her. She never lived with him again. She was still living in New York at the time of the trial, but refused to come to Philadelphia to testify or to have her testimony taken in New York by commission or depositions, although she said she had been married to James Harris and had not been divorced from him.

On June 3, 1909, when Sadie Harris was living, James Harris went through a marriage ceremony with one Lucy Cole before a justice of the peace in Atlantic City, N. J., and thereafter they lived together as husband and wife in New Jersey and Pennsylvania, and were generally so known in the neighborhoods where they lived, until Lucy died in 1936. When some friends who knew of his prior marriage called James's attention to the fact that his first wife was living and to the bigamous nature of his second marriage, his only answer was, "I know what I am doing"; he made no denial or explanation. He may have acted under the erroneous impression that the failure of the minister to file a return of the marriage had invalidated it.

In 1916 Lucy Harris purchased the premises in question, No. 26 S. Ruby Street. She died September 8, 1936. In her will, dated July 28, 1936, she gave James Harris a legacy of $25, and after devising and bequeathing the residue of her estate, real and personal, to her sister, Susanna Arnold, provided, "It is my desire that my husband, James Harris, be permitted to live in the premises, 26 S. Ruby Street, as long as he conducts himself properly." She appointed Mrs. Arnold's daughter, Susie Madison, executrix. She left no issue.

On October 14, 1936 James Harris elected to take against Lucy's will, which election was recorded on

May 27, 1937, after his death. On April 11, 1937 he died leaving a will appointing the defendant, Bernard Lewis, who had boarded with him, sole legatee, devisee and executor. Lewis had lived with James Harris in the property and continued to stay there after the latter's death, and later rented it and kept the proceeds. On August 17, 1937, Susanna Arnold died, intestate, leaving her children, the plaintiffs, as her heirs at law, who brought this action of ejectment.

In our opinion the marriage between James Harris and Sadie Jones in 1891 was sufficiently established. So was the fact that Sadie Harris was not only living in 1909, when James Harris went through the form of a marriage ceremony with Lucy Cole, but that shortly before the trial she was alive and living in New York, where she was called on by Mr. Williams, attorney for the plaintiffs, who tried without success, to get her to come to Philadelphia to testify, or to have her testimony taken by commission in New York. She was not at all interested in the disposition or devolution of Lucy Cole's or Lucy Harris's real estate.

No one seems to have considered applying to the lower court for the issuance of letters rogatory to the Supreme Court of New York, under which, if allowed and issued in due form and complied with by the New York court, her testimony might have been compelled. See Act of April 8, 1833, P. L. 305, sec. 18, p. 308; Case of *Captain McKenzie*, 2 Parsons 227, 1 Clark 356, 2 Pa. L. J. 343; *Zanssig v. W. U. Tel. Co.*, 9 W. N. C. 510; *Wilkinson v. Starr*, 16 W. N. C. 35; *Kuehling v. Leberman*, 9 Phila. 160, 30 L. I. 432; *Pepper's Est.*, 3 Dist. 175, 34 W. N. C. 65; 2 Brewster's Practice secs. 2539-2553; 1 Troubat & Haly's Practice (Brightly's Ed.) secs. 626-629; Bouvier's Law Dict. (Rawle's 3d Revision) Vol. 2, pp. 1935-6; 26 C. J. S., Depositions, §28; 16 Am. Jur., Depositions, §26-28. As the case *developed on the trial* in the court below, the

burden, in our opinion, was on the defendant, after the marriage between James Harris and Sadie Jones had been established and the fact that Sadie Harris was still alive had been clearly shown, to go forward with proof tending to show that a divorce had been procured by either Sadie Jones or James Harris, prior to his marriage with Lucy Cole; and the defendant should have been prepared to produce such proof, in the event that the plaintiffs established—as they did—the marriage of James and Sadie Harris and that the latter was living in 1909 when her husband went through the form of a marriage with Lucy Cole. He produced no such evidence, nor any evidence at all, preferring to rest on the 'presumption of innocence' which he claimed attended James Harris's marriage to Lucy Cole. His chief reliance is on our decision in *Wile's Est.*, 6 Pa. Superior Ct. 435.

We discussed the Wile case at some length in *Sharpe v. Federal Cleaning Co.*, 144 Pa. Superior Ct. 231, 238-240, 19 A. 2d 509, and showed that if that case had rested on nothing but the presumption of innocence, apart from a connected series of facts, not present in this case, the judgment of the court in banc could not have been sustained; that Judge PENROSE, speaking for the lower court, after reciting the marriage of Elizabeth Wile to Benjamin Andrews, his desertion of her, her marriage to John Shetzline twelve years after Andrews' disappearance, when she thought he was dead, the birth of the son whose legitimacy was under attack in the case and the reappearance of Andrews, said: *"If the case rested here, there could be no escape from the conclusion that the second marriage of the wife, notwithstanding the good faith with which it was contracted, was void ab initio."* But he went on to state facts that had been proved which cast doubt on the validity of Mrs. Shetzline's marriage to Andrews or pointed to his having obtained a divorce from her, which

would warrant her contracting a valid marriage with Shetzline and thus render their son legitimate.

It was the production in evidence of these facts which led this court, speaking through President Judge RICE, to say: "They do not, of themselves, prove the dissolution of the first marriage, it is true, *but they do show a probability of it, which, taken in connection with the presumption of innocence and legitimacy,* neutralized the presumption that Benjamin Andrews was the lawful husband of Elizabeth at the time of her marriage with John Shetzline, and left the fact essential to the appellants' claim not proven." (Italics supplied).

It is clear that it was the facts recited by Judge PENROSE and President Judge RICE, which appeared in evidence, *taken in connection with the presumption of innocence and legitimacy* [1] that led this court to affirm the decree of the lower court in banc, which found John Shetzline, Jr. to be the legitimate child of John and Elizabeth Shetzline.

It was expressly so held in *Divvers's Est.,* 22 Pa. Superior Ct. 436, 444, where this court (MORRISON, J.) after stating: "We are of the opinion that when the appellants conclusively proved the marriage of John Divvers with Elizabeth Frederick in 1856 or 1857, and that probably as early as 1861 he began to live with Sarah Strickland, the mother of these children, *something more was required than legal presumption* to establish the fact that John Divvers had been freed from his marital contract with Elizabeth Frederick, so that he could contract a new marriage with Sarah Strickland", went on to say, in distinguishing that case from *Wile's Est.,* supra: "Now really what Wile's Appeal determines is that *the facts in that case and the legal presumptions* rebutted the idea that Elizabeth was the wife of Benjamin Andrews at the time of her marriage with John Shetzline, the father of the boy

---

[1] See *May's Est.,* 141 Pa. Superior Ct. 479, 484, 15 A. 2d 569.

who was claiming the right to inherit from his grandfather's estate." (Italics supplied).

It was these facts which led us in distinguishing the Wile case from *Sharpe v. Federal Cleaning Co.*, supra, to say: "If the presumption of innocence [without more] should be permitted to overcome the presumption that a valid marriage once established continues until the contrary be proved, in circumstances such as were shown to be present in this case, it could be applied with equal effect to validate every case of meretricious relations, of which scores or more have been rejected as invalid in the Supreme Court and this court." In that case we approved the following language of the court below: "Something more than legal presumption was required to establish the fact that Claude E. Sharpe had been freed from his marital contract with Rachel Sharpe so that he could contract a new marriage with Amanda Sharpe. A man cannot at the same time legally have two wives; and one who has married once cannot lawfully marry again unless the first marriage has been dissolved by absolute divorce or by death . . . . . . The marriage of a man or woman, where one of them has by a prior marriage a husband or wife who is then living and undivorced, is not merely voidable, but void, whether it be meretricious or founded in mistake."

The legal position applicable to the facts in this case was well stated in the opinion of the court below, from which we quote the following: "It seems to us that the matter comes down to this: When a valid marriage is proven, the law presumes that it continues until the death of one of the parties (actual or presumptive after seven years), or a divorce is shown. Without either of these appearing if one of the parties marries again, while another presumption arises that it is innocent, that alone is not sufficient to overcome the previously existing presumption of the continued validity of the first marriage. The second presumption does not of

itself destroy the first but requires some proof of facts and circumstances to be given the effect of overcoming the first; as for instance, the long lapse of time during which the other party may be presumed to have died, the question of legitimacy of a child of the second marriage, the fact that the other spouse had likewise remarried, and proof that the decedent, whose heirs are attacking the second marriage, had himself recognized the validity of it. Not one of these factors is present in the instant case. The defendant offered no evidence and was content to rest his case solely on the presumption of innocence as validating the second marriage of his devisor. This is not enough."

The assignments of error are overruled and the judgment is affirmed.