Willie B. HEADEN, Administratrix of the Estate of Fred Headen, Deceased, Appellant,

v.

POPE & TALBOT, Incorporated (Defendant and Third-Party Plaintiff),

Jarka Corporation of Philadelphia (Third-Party Defendant).

No. 12253.

United States Court of Appeals Third Circuit.

Argued Nov. 7, 1957.

Decided Feb. 11, 1958.

Rehearing Denied April 1, 1958.

Abraham E. Freedman, Philadelphia, Pa. (W. R. Lorry, William M. Alper, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

T. E. Byrne, Jr., Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Problems at once absorbing and perplexing confront a court when the facts of an appeal involve the presumption of the continuance of a prior marriage in direct conflict with the presumption of the validity of a subsequent marriage. This is such an appeal.

Fred Headen was employed as a longshoreman by the Jarka Corporation. He was killed on April 9, 1953, while assisting in unloading cargo from a vessel of the defendant.

Plaintiff is administratrix of the estate of Fred Headen. She brought action in the district court under the Pennsylvania wrongful death act, alleging that she was the lawful widow of the decedent; she sued also on behalf of the estate under the Pennsylvania survival statute. Jurisdiction was based on diversity of citizenship. Liability was admitted by defendant. After jury trial to determine damages, judgment was entered on behalf of plaintiff in the amount of $41,328 in the wrongful death action

and in favor of plaintiff in the amount of $795.38 in the survival action. Judgment was also entered in favor of Jarka Corporation in defendant's third-party action against it. No appeal was taken from the latter judgment.

Defendant filed a post trial motion for judgment notwithstanding the verdict or in the alternative for a new trial. By order of April 15, 1957, the district court vacated plaintiff's wrongful death judgment and entered judgment for the defendant, leaving undisturbed the judgment under the survival statute. It is from the former judgment that the alleged widow of Fred Headen appeals.

The underlying issue is whether, upon the basis of the following facts, appellant is the lawful widow of decedent Fred Headen, or whether at the time of his death she was still married to her first husband, Albert Benton.

On May 26, 1918, appellant and Albert Benton were married in North Carolina. Soon afterwards a daughter was born to them. Appellant lived with Benton until she separated from him in 1923; she continued her residence in North Carolina.

On February 16, 1930, Albert Benton married Mary Davis in a ceremonial marriage at York County, South Carolina. They lived together as husband and wife until 1954, during which time nine children were born to them.

On August 31, 1938, approximately fifteen years after appellant separated from Benton, appellant and decedent Fred Headen were married at Elkton, Maryland, in a ceremonial marriage. They lived together in Philadelphia, Pennsylvania, until his death in 1953. No children were born of this union.

The validity of the marriage in question may be sustained only if there is proof of the dissolution of appellant's marriage to Benton. Evidence taken at the trial reveals the following: Appellant testified that in 1930, approximately seven years after her separation from Benton and while she was still residing in North Carolina, she received some papers from a court in South Carolina where Benton had applied for annulment of the 1918 marriage. Appellant signed one set of the papers and returned them to the South Carolina court. The other set was left at her father's home in North Carolina, but after his death appellant was not able to find the documents. It should be noted at this point that there was no annulment on record at York County, South Carolina.

The district court also received into evidence a petition and affidavit filed by Benton in a proceeding in York County, South Carolina, brought by him in 1954 to declare valid his second marriage. The proceeding was sanctioned by a South Carolina statute, Section 20–42, Code of South Carolina, which reads as follows:

"When the validity of a marriage shall be denied or doubted by either of the parties, the other may institute a suit for affirming the marriage and, upon due proof of the validity thereof, it shall be decreed to be valid and such decree shall be conclusive upon all persons concerned."

The petition supporting the 1954 proceeding contained a story to the effect that Benton visited the courthouse at York County, South Carolina in 1930, and after signing certain papers, was informed that his marriage to appellant had been annulled. Upon consideration of this petition and various affidavits, the court of York County in 1954 issued a decree declaring valid and binding the second marriage of Albert Benton. The court decree recited as a subsidiary finding of fact that the marriage of Benton and appellant had been annulled in 1930 at York County. While both the petition and the court's decree were admitted into evidence, the district court instructed the jury to disregard the final decree of the court, but permitted the jury to consider the petition of Benton generally for the purpose of proving the fact of annulment. The following relevant interrogatories were answered by the jury in the affirmative:

"1. Did Albert Benton, in the year 1930, at York, South Carolina, procure an annulment of his marriage to Willie Tyson [appellant]?

"2. Was Albert Benton, in 1930, a resident of South Carolina?"

The district court set aside the verdict and judgment for plaintiff in the wrongful death action and entered judgment for defendant on the theory that the admission of Benton's petition for the general purpose of proving the annulment was erroneous. It was the view of the district court that the petition was admissible for the purpose of impeaching a deposition of Benton read at trial in which he stated that he never was in South Carolina seeking an annulment; on the general fact issue of annulment, the district court considered the petition as hearsay. Without the petition, the district court concluded that there was insufficient evidence to support the interrogatories sent to the jury—i. e., insufficient evidence to support any finding of annulment.

We are met at the threshhold of our consideration with the question of whether the law of Pennsylvania or the law of Maryland should be applied to test the validity of appellant's Maryland marriage to decedent Headen in 1938. It is the position of appellant that the law of Maryland is applicable including the various presumptions arising from the facts. If the law of Maryland is applicable, it seems that proof of a subsequent marriage alone is enough to make out a prima facie case of its validity for jury consideration. Schaffer v. Richardson's Estate, 1915, 125 Md. 88, 93 A. 391, 392, L.R.A.1915E, 186. In Pennsylvania, it appears that proof of a second marriage must be accompanied by circumstances supporting its validity before the presumption of the innocence of the second marriage will be permitted to overcome the presumption of the continuance of the first marriage and thus become the basis for a finding of dissolution of the first marriage. Madison v. Lewis, 1943, 151 Pa.Super. 138, 30 A.2d 357. It is therefore a matter of importance to determine the choice of law question involved.

██ It is the general conflicts rule that a marriage valid where contracted will be valid everywhere. Schofield v. Schofield, 1912, 51 Pa.Super. 564, 568; Franzen v. E. I. Du Pont De Nemours Co., 3 Cir., 1944, 146 F.2d 837, 839. Matters such as the capacity of the parties to enter into the marriage are governed by the law of the state of the marriage. Restatement, Conflict of Laws, § 121 (1934). As is often the case, statements of the general principles are of little assistance in determining the practical problem presented by an appeal. The particular issues presented here revolve around questions traditionally procedural in their nature. It is one thing to say that the capacity to marry is to be determined by the law of Maryland; it is quite another question to inquire how this capacity is to be proved in a Pennsylvania forum.

██ Appellant argues that marital presumptions are rebuttable presumptions of law and are therefore inseparably a part of the substantive right to be controlled by the law of Maryland. The district court decided—not necessarily in conflict with appellant's contention that the presumptions were rebuttable—that such presumptions arise out of the evidence and are therefore controlled by the law of the forum, Pennsylvania. The district court relied on Rodney v. Staman, 1952, 371 Pa. 1, 89 A.2d 313, 32 A.L.R.2d 976, and the Restatement, Conflict of Laws, § 595(2). Some presumptions are merely mechanical aids in reaching a decision. Others represent a strong social policy in favor of reaching a particular result in the close or doubtful cases. The presumptions in suit here are of the latter type. In this case the Headens lived in Pennsylvania during the entire period of their bona fide marital union. Indeed, they were separately domiciled in Pennsylvania before their marriage and apparently made a transient visit to Elkton merely for the purpose of expediting the celebration of

the marriage. Pennsylvania as the domicile was the state primarily concerned with the legal incidents of this union, including the support of Mrs. Headen now that Mr. Headen, the breadwinner, is dead. In these circumstances the federal court of a Pennsylvania district in employing the Pennsylvania presumptions is doing something more than following the procedural law of the forum; it is carrying out the domestic relations policy of the domocile. We think that the district court was correct in applying Pennsylvania presumptions.

It is of more than passing interest to note that the view of the applicability of Pennsylvania law finds support in the decisions of both Pennsylvania and Maryland. In Re Estate of Holben, 1928, 93 Pa.Super. 472, the court was faced with the question of the validity of the wife's second marriage in New York, and incidentally with the second marriage of the first husband in Michigan. The validity of both marriages was tested by the application of Pennsylvania presumptions.[1] And in Schmeizl v. Schmeizl, 1945, 184 Md. 584, 42 A.2d 106, the Court of Appeals of Maryland applied the presumptions of Maryland law to test the validity of the wife's second marriage in California.

The generally accepted American view is that the presumption of the validity of the second marriage is "stronger" than the presumption of the continuance of the first marriage and will overcome it, even if it is necessary to presume the dissolution of the prior marriage by death or divorce. See Annotation, 14 A.L.R.2d 7 (1950). Early Pennsylvania cases indicated by dicta that where the evidence was balanced, the presumption of innocence in contracting the second marriage would overcome the presumption favoring the continuance of the prior marriage. Breiden v. Paff, 1825, 12 Serg. & R., Pa., 430, 431; Senser v. Bower, 1830, 1 Pen. & W., Pa., 450; In re Pickens' Estate, 1894, 163 Pa. 14,

20–21, 29 A. 875, 876, 25 L.R.A. 477. The strong presumptions against engaging in criminal conduct, such as bigamy and adultery, led the courts to presume a dissolution of the prior marriage before the contracting of the subsequent one. It was strongly suggested in Re Wile's Estate, 1898, 6 Pa.Super. 435, that the presumption of the validity of the second marriage could be overcome only by proving a negative; that is, by proving that there was no dissolution of the prior marriage in any court which might have had jurisdiction over the first marriage. Onerous as this burden is, nonetheless the court there held that public policy required it. That case decided that where a prior marriage is shown, its dissolution need not be conclusively proved. Circumstances tending to indicate a probability of its dissolution, taken in conjunction with the presumption of innocence, allow the latter presumption to overcome that one which supports the continuance of the former marriage. See also In re Thewlis' Estate, 1907, 217 Pa. 307, 66 A. 519.

It should be reiterated at this point that rebuttable presumptions of law in Pennsylvania are based upon rational and logical probabilities developed by the facts. Some Pennsylvania cases speak of a "presumption" of the validity of the second marriage arising upon mere proof of that marriage alone; such "presumption" is usually spoken of as not strong enough of itself to overcome proof of a first marriage or to shift the burden to the one attacking that prior marriage. Madison v. Lewis, supra, 151 Pa.Super. 138, 30 A.2d 357; Sharpe v. Federal Window & Office Cleaning Co., 1941, 144 Pa.Super. 231, 19 A.2d 509. In situations where only the second marriage is shown, the "presumption" favoring that marriage is shorn of its legal force of shifting the burden of producing evidence. These Pennsylvania cases decide that a subsequent marriage in itself gives rise to no probability of its legality.

[1] The Supreme Court of Pennsylvania disapproved the ultimate result of this decision, Pierce v. Pierce, 1946, 355 Pa. 175, 49 A.2d 346, but on an entirely different ground.

In such situations it would be better to term the legal device there judicially created as an inchoate presumption which will be accorded its intended purpose of shifting the burden of going forward with evidence only when other circumstances are present which justify the probability that the second marriage was innocently contracted. See In re Wile's Estate, supra, 6 Pa.Super. 435.

Before any extended discussion of the circumstances involved in the present appeal which tend to demonstrate the probability of the innocence of appellant's marriage to Headen, it is necessary to discuss the effect of the district court's ruling on the admission and exclusion of certain evidence.

We think that the district court unduly restricted the circumstances favoring the presumption of the second marriage to proof of the 1930 annulment. Dissolution might have occurred by some other means in any court which might have had jurisdiction over that marriage. The testimony of appellant that she received word of a South Carolina annulment was evidence of the good faith with which she contracted her second marriage; it certainly should not cause her to lose the possible presumption that the prior marriage might have been dissolved in some way other than by an annulment in 1930. The district court recognized that in Pennsylvania, second marriages have been held valid where evidence of dissolution of a prior marriage was in the form of a vague recollection of the spouse that a dissolution had occurred. All of the circumstances of this case, as we discuss later, should be taken into account to determine the probability of the validity of appellant's marriage to decedent. See In re Wile's Estate, supra, 6 Pa.Super. at page 443.

■■ Benton's petition upon which was based the 1954 decree of the South Carolina court was admitted in evidence as proof of the 1930 annulment, the facts of which it recited. A deposition of Benton read at the trial denied that he had procured the 1930 annulment. The petition was admissible to impeach Benton's credibility but was clearly not admissible to prove the annulment. Prior inconsistent statements are not substantive evidence of the facts contained in them. Dincher v. Great Atlantic & Pacific Tea Co., 1947, 356 Pa. 151, 51 A.2d 710; Southern Railway Co. v. Gray, 1916, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030. We think this was prejudicial error and requires us to grant a new trial. Indeed, the district court in its opinion vacating the judgment indicated that a new trial should be granted for this reason.

A more difficult question is raised by the district court's exclusion from the jury's consideration of the decree of the South Carolina court in 1954 which declared valid Benton's second marriage. The decree was based upon the finding that Benton had procured an annulment in that very court in 1930. The district court apparently treated the decree as being in personam, and consequently not binding on defendant here because defendant was not given notice and took no part in the proceeding.

■ It is our view that the proceeding in South Carolina was an adjudication the primary purpose of which was to declare the status of individuals, and to that extent it possessed characteristics of a proceeding in rem. 2 Freeman on Judgments, § 900 (1925); 31 Am.Jur., Judgments § 441 (1940); 35 Am.Jur., Marriage § 235 (1941); In re Holben's Estate, 1930, 300 Pa. 169, 150 A. 604, 605. Being a decree in rem, its adjudication of the validity of Benton's second marriage was conclusive on the world, even in subsequent actions on different subject matters. Restatement, Judgments § 74 (1942); 2 Freeman on Judgments § 900 (1925).

■ A question arises as to the effect of the subsidiary finding of the South Carolina court that Benton had procured an annulment there in 1930. It is the general rule that the essential facts upon which an in rem adjudication is based are binding only in personam and are not conclusive upon third persons not present to litigate them. Gratiot County State·

Bank v. Johnson, 1919, 249 U.S. 246, 248–249, 39 S.Ct. 263, 63 L.Ed. 587; Restatement, Judgments § 74 (1942); 3 Freeman on Judgments § 1524 (1925). There is a line of cases led by Brigham v. Fayerweather, 1886, 140 Mass. 411, 5 N.E. 265, which state by way of dicta that such findings upon which an in rem judgment is based are not even admissible in evidence against third persons not litigating the facts. Tilt v. Kelsey, 1907, 207 U.S. 43, 51, 28 S.Ct. 1, 52 L.Ed. 95; Hilton v. Snyder, 1910, 37 Utah 384, 108 P. 698; Shores v. Hooper, 1891, 153 Mass. 228, 26 N.E. 846, 848, 11 L.R.A. 308. In these cases however, the in rem adjudication was the subsidiary fact upon which the ultimate decree was based, and the decree itself did not declare the status of individuals. The bare holdings of these cases were that a declaration of status is not admissible nor conclusive upon third persons where the declaration was not the ultimate decree, but an in rem finding upon which the decree was based. To the contrary, it has been indicated in Pennsylvania that an adjudication in rem, even though it be only the subsidiary or necessary finding of fact and not the ultimate decree, will be conclusive upon the world. See In re Holben's Estate, supra, 300 Pa. 169, 150 A. at page 605.

■ Our problem is substantially different and presents novel considerations in the determination of the propriety of employing the subsidiary finding of the South Carolina court as evidence. It must be remembered that appellant's argument that the 1918 marriage was dissolved was predicated in large measure upon an allegation of the 1930 annulment in York County, South Carolina, the record of which was lost. The 1954 South Carolina decree was rendered by that same court. The effect of the finding upon which the decree was based is the restoration in that court of its lost record of the annulment. We are of the opinion that under these circumstances that finding is admissible in evidence as tending to show that a decree of annulment had been granted in 1930.

■ The 1954 decree of York County, South Carolina, has evidentiary force in this case only if it was rendered by a court of competent jurisdiction. Therefore, nothing which was said in our consideration of this decree should be interpreted as an intent to foreclose an attack on the jurisdiction of the South Carolina court. It was further contended by the defendant at the trial that both the decree and Benton's petition upon which it was based were procured by overreaching and fraud. Allegations of defendant, if true, cast serious reflections upon tactics of counsel, and may even involve a question of legal ethics. Plaintiff emphatically denied that the petition and decree were obtained by fraud. The question of fraud should be left to the jury, and if defendant's version is believed, the jury should be instructed to disregard the petition and the decree. If the version of plaintiff is accepted by the jury, then the decree and the petition will be considered in a light consistent with our discussion above.

■ We return now to the question of whether there were present under Pennsylvania law sufficient circumstances from which the jury could conclude that the second marriage was valid. There was evidence of the following: First, the marriage in issue was contracted ceremonially, and entered into in good faith in the honest belief that the prior marriage was terminated. Second, there was a long period of time between appellant's separation from Benton in 1923 and her second marriage in 1938. Third, that appellant had lived with the husband of her second marriage for fifteen years and this marriage was never questioned but rather was accepted by friends and relatives. Fourth, the remarriage of Benton ceremonially. It should be emphasized here that Benton's capacity to remarry was judicially decided by the 1954 South Carolina decree declaring his second marriage valid. Fifth, the determination of the invalidity of the marriage of appellant and decedent Headen would indirectly affect

the legitimacy of Benton's nine children of his second marriage.

If the above circumstances are proved, they are more than sufficient under Pennsylvania law to provide the basis for a finding by a jury that appellant's marriage to Headen was valid. In re Wile's Estate, supra, 6 Pa.Super. 435; In re Thewlis' Estate, supra, 217 Pa. 307, 66 A. 519; Fritsche v. O'Neill, 1942, 147 Pa.Super. 153, 24 A.2d 131; In re Hilton's Estate, 1919, 263 Pa. 16, 106 A. 69.

The judgment of the district court will be reversed and the cause will be remanded for a new trial consistent with this opinion.