Schaefer, Appellant, *v.* Schafer.

Argued December 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Daniel Marcu,* with him *Marcu, Marcu & Marcu,* for appellant.

*Joseph V. McEnery,* for appellee.

OPINION BY HIRT, J., March 18, 1959:

Frederick John Schaefer and Fannie Alexander, the parties to this annulment proceeding, had entered into a formal ceremonial marriage in Elkton, Maryland, on June 29, 1957. He then was 68 and she 64 years of age. They were both residents and citizens of Pennsylvania and they went into Maryland to be married, and for that purpose alone. They returned to this State immediately after their marriage, but separated the same day after spending but a few hours in a seaside hotel. They have not lived together nor have they cohabited since their wedding day. Ever since the separation plaintiff has lived in a house owned by him in Philadelphia; and she in a home which she owns or in a rented apartment, in Chester. The defendant, on October 16, 1937 had married one Alexander Alexander and they lived together as husband and wife until October 1947 when he left this country to return to his native Armenia, in the Soviet Union. He arranged for his passage through the "Committee to Aid the Repatriation of Armenians" with offices in New York. He had sold his interest in a restaurant because of ill health, and in order to raise money for

the trip. His purpose in going to Armenia was to visit his aged father, and it was his intention to return to this country and to his wife, the defendant, after a stay there of about three months. He never did return and the defendant has received no word from him either directly or indirectly since he boarded ship at New York in October 1947. Although the present parties were married in Maryland the question of the validity of their marriage contract may be questioned in an annulment proceeding in this State. *Maurer v. Maurer,* 163 Pa. Superior Ct. 264, 60 A. 2d 440.

There is no dispute as to any of the facts in this case. The issue is directed wholly to the inferences of law to be drawn from admitted facts. Early in 1950 the defendant attempted to ascertain the whereabouts of her husband through our Department of State and particularly through the acting officer of the department in charge of U.S.S.R. affairs. The report of this officer for the department to her, dated June 29, 1950, stated that its investigation disclosed that Alexander had become a naturalized citizen of this country in 1943; that the records of the department show that "Alexander Alexander was issued an American passport on March 27, 1947 for the purpose of visiting his aged father in the Soviet Union"; and that in the application for the passport Alexander stated that he intended to return to the United States in three months. It was the judgment of the department as set forth in the report that the Soviet government attributed to Alexander the status of a repatriated Armenian and for that reason would not grant him the privilege of leaving the Soviet Union. The department reported further: ". . . the American Embassy in Moscow has informed the Department of State that it believes that for reasons of personal safety persons residing in the Soviet Union prefer to have no correspondence with

their relatives in the United States or with the American Embassy in Moscow. This conclusion is based on the fact that many residents of the Soviet Union have ceased writing to their relatives in the United States and have, furthermore, failed to reply to the Embassy's letters requesting welfare information for transmittal to their relatives in the United States. In this connection consideration should be given to the indications that foreign mail and mail from foreign missions to persons residing in the Soviet Union is censored by the Soviet authorities and that coercive measures are being applied to discourage the continuance of correspondence with foreigners". The defendant, in depositions taken by the plaintiff as a part of his case, said that one Arnas Markain, a nephew of Alexander, came to her apartment in 1955 and said that he had a letter from Russia which he produced, in which it was stated that Alexander had died in 1954. The writer of the letter was not identified by Markain; it was in Russian and defendant said she could not read it. Markain died in 1955 and the letter, after his death, could not be located. The plaintiff had known the defendant for three years and prior to the marriage she had made a full disclosure to him of her marriage to Alexander; she then told him that Alexander was dead; and it was upon that assumption that the plaintiff married her in 1957.

Reference should be made to one other fact in this record. *After* defendant had been told by Markain of the report of Alexander's death in the letter above referred to, the defendant asked plaintiff for $250 for the purpose of prosecuting an action in divorce against Alexander. As to the significance of this testimony we agree with the master that contemplation of a divorce was not an admission on her part that Alexander was then still living; on the other hand the advisability

of a divorce was considered by her, on the eve of her marriage with plaintiff, to make certain of her then marital status, since the only word of Alexander's death was hearsay.

In §10(h), ¶3 of the Act of May 2, 1929, P. L. 1237, 23 PS §10, and in the subsequent amendment, the Divorce Code indicates some legislative consideration for persons who without culpable fault enter into a bigamous marriage. That section gives to the party who has not remarried the right to have his marriage dissolved in an action brought within six months after his return. The present action was properly brought by the husband in the marriage contract under §12 of the 1929 Code, amended by the Act of July 15, 1935, P. L. 1013, 23 PS §12, which provides that a marriage "absolutely void when contracted, . . . may, upon the application of *either* party, be declared null and void . . ." (Emphasis added).

The legal principle applicable to the facts in the present case was thus stated by President Judge KELLER by quoting with approval from the language of the court below in *Madison et al. v. Lewis,* 151 Pa. Superior Ct. 138, 145, 30 A. 2d 357: " 'It seems to us that the matter comes down to this: When a valid marriage is proven, the law presumes that it continues until the death of one of the parties (actual or presumptive after seven years), or a divorce is shown. Without either of these appearing if one of the parties marries again, while another presumption arises that it is innocent, that alone is not sufficient to overcome the previously existing presumption of the continued validity of the first marriage. The second presumption does not of itself destroy the first but requires some proof of facts and circumstances to be given the effect of overcoming the first; as for instance, the long lapse of time during which the other party may be presumed to have died,

. . .' " Among the facts referred to by Judge KELLER in the *Madison* case, which have the effect of overcoming the presumption of the continuance of the first marriage, is the "long lapse of time" after the disappearance of a party to the first marriage. In the instant case, eliminating the hearsay evidence pointing to Alexander's death in 1954, there was a lapse of time of almost 10 years since defendant had last heard from him before she remarried. In the interim she had made inquiries of the Department of State and thus showed her good faith in attempting to ascertain the whereabouts of her husband. She could not reasonably have pursued her investigation further, particularly in view of the discouraging aspect of the Department of State's letter above referred to. Cf. *Thewlis's Estate*, 217 Pa. 307, 66 A. 519 and particularly *Fritsche v. O'Neill*, 147 Pa. Superior Ct. 153, 24 A. 2d 131 in which it was held that where a conflict of presumptions is presented by the facts, the one of the validity of the second marriage, and the other, the continued existence of the first, the courts "will permit the presumption to prevail which negatives criminality".

To overcome the presumption that the marriage, in issue here, was valid the burden was on this plaintiff to prove specifically that Alexander Alexander was alive on June 29, 1957 when the present marriage was contracted. Our estimate of the probative weight of the evidence in this case coincides with that of the master. The plaintiff has failed to meet the burden on him of proving that the defendant's prior husband was still living on the date when he married the defendant. The lower court was right in adopting the findings and the conclusions of law, of the master, and in dismissing the complaint.

Order affirmed.