## D'Ippolito Estate

Before Klein, P.J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Herbert K. Fisher* and *Bloom, Ocks & Fisher*, for exceptant.

*David L. Creskoff* and *Creskoff & Creskoff*, contra.

BURKE, J., June 4, 1965.—The major question presented to the court en banc on exceptions is the status of Anthony D'Ippolito, a claimant and alleged surviving husband of decedent, against decedent's estate for an intestate share as opposed to the claims of three sisters and a brother of decedent.

Both parties agreed that decedent had entered into a valid marriage with Frank Costanza on July 23, 1919. The parties lived together and one child, a daughter, was born but predeceased decedent. In 1923, Frank Costanza left their home and has not been heard of since. Anthony D'Ippolito had been married and his wife died in 1926, and, in 1927, he and decedent established a meretricious relationship and decedent advised claimant that she was married.

In 1946, the parties went to Wilmington, Del., to obtain a marriage license. A certified copy of the later marriage license was offered in evidence. It reveals that decedent in answering the question "Previous marital status" replied "Single." The transcript of the testimony of claimant shows that at that time he took issue with decedent's answer by reason of her prior marriage. He testified that he said to decedent, "why you do that? You told me you was married." Decedent replied, "According to the law seven years a husband desert automatic marriage die." In spite of this unre-

liable advice, the parties participated in a ceremonial marriage in Wilmington, Del., on October 14, 1946. Claimant and decedent returned to Philadelphia, where they cohabited until decedent's death on March 15, 1962. No children were born of this union.

The alleged husband testified that, after their marriage, efforts were made to locate Frank Costanza, decedent's lawful husband. These attempts consisted of no more than a visit to Twenty-second and Arch Streets, Philadelphia, Pa., where a relative supposedly lived, and to the Pocono Mountains. These meager efforts to find Frank Costanza were fruitless and, as found by the learned auditing judge, negate any inference of either good faith or innocence. The testimony places culpability on the claimant equal to that ascribed to decedent. The record shows that claimant on several occasions, in the presence of third persons, reminded decedent that he had no marital obligations while she had not been free to marry him.

Where, in a civil proceeding it appears that one of the parties to a marriage was previously married and it does not appear that the other party to the first marriage had died before his spouse contracted the second marriage or that they had previously been divorced, the presumption that the second marriage is innocent is not sufficient alone to overcome the presumption of the continued validity of the first marriage. See Hudek v. United Engineering & Foundry Company, 152 Pa. Superior Ct. 493 (1943); Watt Estate, 409 Pa. 44 (1962).

In Grunda v. First Lithuanian B. & L. Assn., 128 Pa. Superior Ct. 604, 606 (1937), the court said, at page 607:

"So too, the evidence should establish a reasonably sufficient inquiry concerning the absence or disappearance of the supposed decedent."

In the instant case, the record is almost barren of

evidence of a reasonable search to locate Frank Costanza, as above recited. Instead, they resorted to the furtive scheme of obtaining a license and being married in a neighboring State, where the probability of discovery was minimized.

In connection with the application of various presumptions with respect to the validity of a marriage, it has been held that the burden of proving the invalidity of the second marriage rests upon the person who claims such invalidity: Watt Estate, supra. The certificate was offered in evidence by claimant and when coupled with his testimony was self-defeating. It would be absurd, under such circumstances, to hold that the invalidity of the second marriage was not established. . . .

The findings of fact by the learned auditing judge are not capricious and are fully supported by the record.

For the foregoing reasons, we dismiss the exceptions to the adjudication.

### DISSENTING OPINION

LEFEVER and SHOYER, JJ., June 4, 1965. — It is firmly established that a spouse who voluntarily enters into a ceremonial marriage cannot challenge the validity thereof on the ground that his possibly subsisting prior marriage constituted an impediment to the challenged marriage: Commonwealth ex rel. Wenz v. Wenz, 195 Pa. Superior Ct. 593. In the instant case, decedent voluntarily and willingly contracted the challenged marriage with claimant; in fact, she urged claimant to marry her.

Decedent's sisters, who claim her estate, are in no better position than decedent, since their rights derive from her: Thewlis's Estate, 217 Pa. 307. Hence, in law, they are in no position to challenge the validity of decedent's marriage to claimant. Moreover, in equity, the sisters should be precluded or estopped

from contesting the validity of this marriage, since they themselves urged both parties to contract the marriage "because their sister wanted to live right and she couldn't do it without being married". During the almost 20 years of the subsistence of the challenged marriage the sisters knew of it, acquiesced in it and approved it. In fact, they treated decedent and claimant as validly married and acted toward claimant as their brother-in-law.

Objection is made that decedent's conduct lacks the so-called presumption of innocence. It is true that decedent stated on their application for marriage license that she was single. However, it was testified that she believed a person was eligible to remarry after her husband had deserted for a period of seven years. Precedent in this and other Pennsylvania courts supports her, because, if a second marriage is contracted after seven years from the time the first spouse was last heard of, a presumption arises that the first spouse had died prior to the second marriage and the second marriage is, therefore, valid: Breiden v. Paff, 12 S. & R. 430 ("old transaction", more than 30 years) ; Wilhelm's Estate, 23 Dist. R. 757 (O. C. Phila., 13 years' absence) ; Commonwealth v. McKenna, 17 Dist. R. 586 (Q. S. Phila., seven years' absence) ; Commonwealth v. Clineff, 21 Del. Co. 462 (five years, two months' absence before second marriage; over 12 years' absence to date of contest).

In Breiden v. Paff, supra, our Supreme Court, through Mr. Justice Gibson, said (p. 431) :

"I am of opinion the court were right, in leaving the jury to presume, that the persons to whom she had been married, previously to her marriage with Paff, were dead. In an old transaction like this, the fact of a second marriage, is of itself some evidence of the death of the former husband. There are sometimes cases where it is unavoidably necessary to decide on

the existence of facts, without a particle of evidence on either side, and if a decision in a particular way, would implicate a party to the transaction, in the commission of a crime, or any offence against good morals, it ought to be avoided; for the law will not gratuitously impute crime to any one, the presumption being in favour of innocence, till guilt appear. In a case like the present, this presumption will almost invariably, accord with the truth; for the circumstance of the husband being in full life at the second marriage of the wife, rarely occurs more than once in a thousand instances. Here there were no particular circumstances, inconsistent with the presumption, the evidence being nothing more than, that the wife *had been* previously married; and it would be attended with great danger of injustice, if a casual expression of a witness, should unexpectedly lay a party under the necessity of unravelling all the particulars of a transaction, of thirty years' standing."

In Madison v. Lewis, 151 Pa. Superior Ct. 138, 145-46, President Judge Keller adopted the language of the lower court, which our Supreme Court in Watt Estate, 409 Pa. 44, 52, characterized as the "clearest and most logical expression" on this subject:

"When a valid marriage is proven, the law presumes that it continues until the death of one of the parties (*actual or presumptive after seven years*), or a divorce is shown. Without either of these appearing if one of the parties marries again, while another presumption arises that it is innocent, that alone is not sufficient to overcome the previously existing presumption of the continued validity of the first marriage. The second presumption does not of itself destroy the first but requires some proof of facts and circumstances to be given the effect of overcoming the first; *as for instance, the long lapse of time during which the other party may be presumed to have died,*

the question of legitimacy of a child of the second marriage, the fact that the other spouse had likewise remarried, *and proof that the decedent, whose heirs are attacking the second marriage, had himself recognized the validity of it."* (Italics supplied.)

Decedent believed in her marriage, it gave her "a different status", and her sisters, at her request, thereafter addressed her as Mrs. D'Ippolito. Search for the missing Frank and contemplation of a divorce were "not an admission on her part that [Frank] was then still living": Schaefer v. Schaefer, 189 Pa. Superior Ct. 120, 123. Furthermore, since the passage of the Marriage Law of August 22, 1953, P. L. 1344, 48 PS §§1-1.—1-25., "good faith" has been made the test for validity of a second marriage. Good faith as used in section 17 of this act, (which applies to residents of this Commonwealth regardless of where married,) means "a bona fide desire for marriage": Commonwealth ex rel. Wenz v. Wenz, supra, p. 600; Freedman, Pa. Law of Marriage and Divorce, 2d ed., p. 145.

In our opinion, the learned auditing judge wrongfully placed upon the claimant the burden of proof of the death of the decedent's first husband who had not been heard from by decedent or her sisters for some 40 years prior to her death. The burden of proof properly lay with decedent's sisters who challenged the validity of claimant's marriage to decedent: Watt Estate, supra, pp. 54-55; Thewlis's Estate, supra; Fritsche v. O'Neill, 147 Pa. Superior Ct. 153, 162, 164; Holben's Estate, 93 Pa. Superior Ct. 472; Wile's Estate, 6 Pa. Superior Ct. 435. Failing to meet this burden, their claim should have been denied, and the estate should be awarded to Anthony as part of the spouse's allowance.

Accordingly, we dissent.

---

Saylor, J., joins in this dissent.