632 A.2d 322

**Grace P. Brown CANN,**

v.

**Charles CANN, II, Appellant.**

Superior Court of Pennsylvania.

Argued May 12, 1993.

Filed Oct. 28, 1993.

236

Sherry A. Schwalbach, Hazletown, for appellant.

Before POPOVICH, HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This appeal is from a December 3, 1993 decree granting a divorce to Grace P. Brown Cann and Charles Cann, II. Appellant, Charles Cann, II, presents the following issues for

our review: First, appellant argues that the trial court erred in dismissing his petition for summary judgment on the issue of whether there was a common law marriage, as appellant's first wife was not declared to be presumed dead by the court. Second, appellant argues that the trial court erred in finding that a valid common law marriage existed between the parties. *See* Appellant's Brief at 2. For the reasons that follow, we affirm.

The relevant facts are as follows. In 1968, appellant married Ilonka Cann. The couple had one child. In 1970, Ilonka disappeared and has not been heard from since. In 1971, appellant began a relationship with appellee, who was fully aware of appellant's marriage and his wife's disappearance. In late 1971, appellee moved into appellant's home where she lived until 1987.

On April 30, 1987, appellee commenced an action in which she sought a divorce, alimony, alimony pendente lite, equitable distribution, and counsel fees and costs. In appellee's complaint she alleged that the parties were married on June 9, 1972. Appellant, however, denied that he was ever married to appellee. On October 10, 1989, a motion for summary judgment was filed by appellant, which was granted on February 7, 1990. Subsequently, the order of February 7, 1990 was vacated, to give the parties an opportunity to take additional depositions on the issue of common law marriage.

On August 1, 1990, the trial court found that the parties had entered into a common law marriage on June 19, 1982 and ordered that the parties proceed with the divorce action. On December 3, 1992, the trial court entered a decree of divorce. This timely appeal followed.

Appellant first argues that the trial court erred in dismissing his petition for summary judgment and finding that a common law marriage existed when appellant's preexisting wife was not declared to have been presumed dead by the court. We disagree.

The Rule governing motions for summary judgment provides in pertinent part that:

238

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035. Thus, summary judgment will only be granted in the clearest of cases. *Kotwansinski v. Rasner*, 436 Pa. 32, 37, 258 A.2d 865, 867 (1969). The moving party has the burden of proving the nonexistence of any material fact. *Kent v. Miller*, 222 Pa.Super. 390, 393, 294 A.2d 821, 823 (1972). Furthermore, all doubts as to the existence of a genuine issue of a material fact must be resolved in favor of the nonmoving party. *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 203, 280 A.2d 570, 573 (1971).

■ Appellant contends that because of the existing impediment of a prior marriage the relationship between himself and appellee was meretricious.[1] This argument is without merit. We agree that a valid prior marriage will invalidate any subsequent marriage. *Madison v. Lewis*, 151 Pa.Super. 138, 145, 30 A.2d 357, 360 (1943). However, a valid marriage continues only until death of one of the parties (actual or presumptive) or a divorce. *In re Watt's Estate*, 409 Pa. 44, 53, 185 A.2d 781, 785 (1962).

This court has long held that where a spouse from a prior marriage has been missing for a period of seven years, she is presumed dead for the purposes of the validity of a prior marriage. Appellant argues that since an interested party never petitioned the court to declare Ilonka Cann dead, the presumption is not applicable.[2] However, in these instances the court has upheld this presumption, regardless of whether the court acted upon a petition. *See, e.g., Schaefer v. Schaefer*, 189 Pa.Super. 120, 149 A.2d 578 (1959) (court recognized the validity of second marriage where appellant's husband had been missing for ten years); *In re Estate of D'ippolito*, 420 Pa

1. A meretricious relationship is defined as a "relation sustained by persons who contract a marriage that is void by reason of legal incapacity." *See,* Black's Law Dictionary.

2. *See* 20 Pa.C.S. § 5701 (1972).

541, 218 A.2d 224 (1966) (court recognized the validity of second marriage where 24 year period elapsed between the time decedent was deserted by her first husband and the second marriage); *Madison,* 151 Pa.Super. at 138, 30 A.2d at 357 (court refused to recognize the validity of a second marriage where there was no divorce and first wife was still alive). *See also* 1 A. FREEDMAN & M. FREEDMAN, LAW OF MARRIAGE AND DIVORCE IN PENNSYLVANIA § 85 (1957) (where second marriage takes place seven years after first spouse was last heard of, presumption of death arises and second marriage is valid).

In the present case, appellant's wife disappeared in 1970 and has not been seen nor heard from since. In 1971, appellant entered into a meretricious relationship with appellee. As appellant's wife had been missing for a period exceeding seven years, the trial court held that appellant's wife was presumed dead as of 1977. To overcome the presumption, the burden is on appellant to prove that his first spouse was alive at the time of the second marriage. *Schaefer,* 189 Pa.Super. at 120, 149 A.2d at 578. As appellant offered no evidence to the contrary, the impediment to marriage was removed in 1977. Accordingly, we find appellant's first argument to be without merit.

Appellant next argues that the evidence did not support the trial court's findings that there was a valid common law marriage between the parties. In Pennsylvania, a common law marriage is a marriage by express agreement of the parties without ceremony, and usually without a witness, and *verba de praesenti,* uttered with the purpose of establishing a relation of husband and wife. *In re Manfredi's Estate,* 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). However, common law marriage will still be recognized without use of *verba de praesenti,* where the intention of the parties as expressed by their words, is that they were married. *In re Estate Stauffer,* 504 Pa. 626, 632, 476 A.2d 354, 357 (1984). While cohabitation and reputation alone will not suffice to establish a common law marriage, they are relevant factors

which a court may consider in determining whether the parties have entered into a common law marriage. *Canute v. Canute*, 384 Pa.Super. 60, 63, 557 A.2d 772, 774 (1989).

■ However, "[w]here a relationship is meretricious at its inception, there must be clear evidence of a change in status to rebut the presumption that the non-marriage continued after the impediment to the marriage was removed." *Steadman v. Turner*, 357 Pa.Super. 361, 365, 516 A.2d 21, 23 (1986). In making this determination, the court may only look to instances occurring after the impediment to the marriage was removed in finding a common law marriage.

■ Appellee testified that on June 19, 1982, five years after the impediment was removed, the couple formally exchanged vows.[3] At that time the couple expressed a present intention to marry. In addition there is corroborative evidence introduced by appellee that supports a finding that the parties were married in 1982.[4]

A trial court's findings will not be disturbed if it is supported by the record. *Madison*, 151 Pa.Super. at 140, 30 A.2d at 358. Here there was directly supporting and corroborating evidence for the trial court's finding that after 1977 appellant entered into a contract per *verba de praesenti* with the purpose of establishing a marriage. Accordingly, we affirm.

Affirmed.

3. In the presence of appellee's parents, appellant asked appellee to marry him and appellee responded affirmatively.

4. Appellee demonstrated that the parties filed joint income tax returns for the years 1982–1985; that each party designated the other as the beneficiary of an IRA account in the years 1984 and 1985; that appellant purchased life insurance for himself and his son in 1985, naming appellee as the primary beneficiary on his policy and the contingent beneficiary on his son's policy; that appellant listed appellee's relationship on the policy as his wife and mother of his son; and finally, that appellant made two claims as appellee's husband on her Blue Cross/Blue Shield policy.