J-A24012-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ESTATE OF WILLIAM H. CROPPER, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF MARGARET SLABY | |
| | No. 1240 WDA 2016 |

Appeal from the Order Entered July 20, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-15-00392

BEFORE:   MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                 FILED DECEMBER 27, 2017

Margaret Slaby appeals from the July 20, 2016 order of the Allegheny County Court of Common Pleas denying her petition for a declaration that she was the common law wife of the late William H. Cropper ("Decedent").  We affirm.

Slaby was previously married to Kenneth Slaby; they divorced on January 15, 1986.  Decedent was initially married to Margaret Cropper; they divorced on June 25, 1957.  Decedent later married Shirley Cropper, who died on April 20, 1999.  Decedent died intestate on November 1, 2014 and is survived by six children:  Cynthia LaGuardia, Kelly Cropper Hall, Sandra DeFrancesco, Diane Hatfield, Wayne Cropper, and Wesley Cropper.[1]

---

[1] The only appellees who filed a brief in this matter are LaGuardia, Hall, and DeFrancesco.  At the May 2, 2016 hearing, the parties presented evidence

On November 23, 2015, Slaby petitioned the trial court for a declaration that at the time of Decedent's death, Slaby was his common law wife.[2] Slaby claimed that on December 25, 2000, she and Decedent exchanged vows and held themselves out as a married couple for the remainder of Decedent's life.

The trial court held an evidentiary hearing on May 2, 2016, at which 14 witnesses testified. On July 20, 2016, the trial court denied Slaby's petition, concluding that she had failed to establish the existence of a common law marriage by clear and convincing evidence. Slaby timely appealed to this Court.

On appeal, Slaby presents one issue for our review: "Under all the circumstances of this case, did Margaret Slaby establish that she was the common law surviving spouse of [Decedent]?" Slaby's Br. at 2.

This Court recently set forth the applicable standard of review as follows:

> Our standard of review in a declaratory judgment action is "limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial

_____

that Decedent may have fathered another child, the late Linda Bateman, who is survived by three children: Adam Bateman, Mark Bateman, and Daniel Bateman. The Batemans are participants in the appeal but did not file a brief. Hatfield is not a participant in this appeal.

[2] "[T]he Pennsylvania legislature abolished the doctrine of common law marriage effective January 1, 2005. See 23 Pa.C.S. § 1103. However, section 1103 of the Marriage Law permits the legal recognition of common law marriages contracted before January 1, 2005." In re Estate of Carter, 159 A.3d 970, 974 (Pa.Super. 2017). Thus, Slaby must demonstrate that she and Decedent entered into a common law marriage before January 1, 2005.

court. The application of the law, however, is always subject to our review."

In re Estate of Carter, 159 A.3d 970, 974 (Pa.Super. 2017) (quoting Vignola v. Vignola, 39 A.3d 390, 393 (Pa.Super. 2012)).

Slaby contends that "she entered into a common law marriage with the [D]ecedent no later than December 25, 2000." Slaby's Br. at 6. She claims that on that date, and in the presence of her sister, she and Decedent exchanged vows with the intent to create a marriage contract. We disagree with Slaby's assertion that the evidence presented compels the conclusion she seeks.

"[A] common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, by words—not in futuro or in postea, but—in praesenti, uttered with a view and for the purpose of establishing the relationship of husband and wife." Carter, 159 A.3d at 974 (quoting In re Estate of Manfredi, 159 A.2d 697, 700 (Pa. 1960)) (italics in original). The party seeking to establish a common law marriage bears the burden of proving the exchange of verba in praesenti by clear and convincing evidence. Id. In Carter, we explained:

> The requirement of "words in the present tense" is designed to ensure the existence of a present intent to marry, like the present intent established in a formal wedding ceremony, rather than a plan to marry in the future or a claim to have wed in the past. With regard to this requirement, the Supreme Court explained that a "common law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time." [Staudenmayer v. Staudenmayer, 714 A.2d 1016, 1020 (Pa. 1998)] (emphasis added). Stated differently, "common law marriage will still be recognized

without use of verba de praesenti, where the intention of the parties[,] as expressed by their words, is that they were married." Cann v. Cann, 429 Pa.Super. 234, 632 A.2d 322, 325 (1993).

Id. at 979. Our Supreme Court has described the petitioner's burden of proving a common law marriage as "heavy." Staudenmayer, 714 A.2d at 1021; see id. at 1020 ("When an attempt is made to establish a marriage without the usual formalities, the claim must be reviewed with 'great scrutiny.'") (quoting Estate of Gavula, 417 A.2d 168, 171 (Pa. 1980)).

At the hearing, Slaby testified that she and Decedent met through a mutual friend and began dating in 1988. N.T., 5/2/16, at 91. Slaby testified that Decedent moved into her residence in 1989, while he was still married to Shirley Cropper; Shirley died ten years later. Id. at 88, 93.

Slaby testified that on December 25, 2000, she and Decedent exchanged vows in the presence of her sister, Christine Morena. Slaby described the event as follows:

> We were sitting down at the kitchen table after everybody left. We were talking about New Year's resolutions. My sister said she was going to quit smoking which I had been on her about that constantly. [Decedent] said ours was to get married. [Morena] said why don't you just do it now. So we did.
>
> . . .
>
> We exchanged vows. [Decedent] said I take you as my wife. I said I take you as my husband.

Id. at 100-01. Decedent and Slaby did not exchange rings on that date, nor did they consider December 25, 2000 to be their anniversary. Id. at 151.

Slaby testified that she and Decedent did not tell anyone that they were married, including their own children. Id. at 152, 165.

Slaby further testified that after the December 25, 2000 exchange of vows, she and Decedent "kept [their] own separate identities" and that she and Decedent represented that they were single "[i]n everything that [they] did." Id. at 139. Slaby admitted that she could not find any greeting cards indicating that she was Decedent's wife after searching for 63 hours. Id. at 153-54. Although they had cohabitated since 1989, she and Decedent owned separate residences and listed themselves on their respective deeds as "unmarried." Id. at 162-63, 203-05.[3] Slaby and Decedent also filed separate tax returns and never held any joint assets. Id. at 142-43. According to Slaby, she and Decedent "continued [life] as it had been" after the exchange of vows. Id. at 101.

Morena, Slaby's sister, testified regarding the December 25, 2000 incident as follows:

> After everything was winding down, we were sitting there as usual in the kitchen talking, myself, [Slaby], [Decedent], and we were talking about New Year's resolutions. I said, well mine is to quit smoking which I still haven't done that. [Decedent] said, well, mine is to get your sister to marry me. I said, well, why don't you just do it, do it now, and he said, [Slaby], I take you as my wife. She kind of chuckled little bit and said, [Decedent], I take you as my husband.

_____

[3] Slaby and Decedent also purchased two properties together for which they held title as joint tenants with right of survivorship. Slaby and Decedent were each identified as "single" on both deeds. N.T., 5/2/16, at 133-36.

Id. at 79. Morena testified that she attributed no significance to Slaby's and Decedent's exchange of words at that time. Id. at 86.

Wayne Cropper, Decedent's son, testified that he had a very close relationship with his father and that Decedent never told him of an exchange of vows on December 25, 2000 or that he and Slaby were married. Id. at 207. Cropper also testified that in 2002 or 2003, he and his father had discussed common law marriage. Cropper summarized the conversation as follows:

> [I said to my father,] [i]f you ever broke up [with Slaby], would you be afraid of her filing for common law? He said no. This is the reason he gave me . . . he said I maintain my residence. I never changed where I voted. All my paperwork and everything comes to my residence. And he was pretty adamant that . . . because he did that . . . there was no case for common law [marriage].

Id. at 197-98.

Even accepting as true the uncontradicted testimony that on December 25, 2000, Decedent said to Slaby, "I take you as my wife," and Slaby said, "I take you as my husband," such evidence was insufficient to prove that Slaby and Decedent stated those words with the specific intent to create a marriage contract. See Carter, 159 A.3d at 974. Indeed, other evidence presented at the hearing supported the conclusion that Slaby and Decedent did not so intend. Slaby testified that she did not know when she first believed she was Decedent's common law spouse. N.T., 5/2/16, at 131-32. After the exchange of vows, neither Slaby nor Decedent told any of their children that they were married, and the couple "continued [life] as it had been." N.T., 5/2/16, at

- 6 -

101. Moreover, Wayne Cropper testified that, a few years after the exchange of vows, his father told him that he did not believe he was Slaby's common law spouse. Based on the evidence presented at the hearing, which the trial court credited, we conclude that Slaby failed to meet her "heavy" burden of proving that she and Decedent intended the December 25, 2000 exchange of vows to create the legal relationship of husband and wife.

Next, Slaby asserts that "[w]hile neither cohabitation nor holding out [as a married couple] creates a common law marriage, both of those factors are evidence tending to show a marriage." Slaby's Br. at 21. As our Court has recognized, however, "courts may rely on the presumption [of marriage based on cohabitation and reputation] only in the absence of direct testimony regarding the exchange of verba in praesenti." Carter, 159 A.3d at 980 n.9 (quoting Staudenmayer, 714 A.2d at 1021); see also PNC Bank Corp. v. Workers' Comp. Appeal Bd. (Stamos), 831 A.2d 1269, 1284-85 (Pa.Cmwlth. 2003) (en banc) (noting that "evidence of cohabitation and reputation was irrelevant" to determining whether petitioner met his burden of proving common law marriage by exchange of verba in praesenti). Because Slaby presented direct testimony regarding the exchange of verba in praesenti, we need not consider evidence of subsequent cohabitation and reputation to determine whether Slaby met her burden of proving that she and Decedent exchanged words of present intent to marry on December 25, 2000.

Even if we were to consider the evidence of Slaby's and Decedent's subsequent cohabitation and reputation, we would still conclude that Slaby failed to satisfy her burden of proof. As the trial court cogently explained:

> The record demonstrates that some of the witnesses (including a daughter of the Decedent) were persuaded that the relationship was that of husband and wife. But the record also reflects contrary testimony from witnesses, including other children of the Decedent's. The documentary evidence admitted in this case also does not demonstrate one clear path, given the differences on car titles, deeds to properties[,] and the like. Because most, if not all, of the testimony and documentary evidence displayed credible traits, the Court, being constrained by the clear and convincing evidence standard, determined that [Slaby] was unable to sustain this burden.

Trial Ct. Op., 3/13/17, at 2-3 (unpaginated); see In Interest of J.M., 166 A.3d 408, 427 (Pa.Super. 2017) ("Clear and convincing evidence requires that a finding be based on testimony by credible witnesses who clearly relate facts that are 'so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'") (quoting In re Novosielski, 992 A.2d 89, 107 (Pa. 2010)).

Based on our review of the record, we conclude that the trial court did not abuse its discretion in determining that Slaby failed to establish, by clear and convincing evidence, that she and Decedent entered into a common law marriage on December 25, 2000.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/27/2017