## Johnson *v.* J. H. Terry & Co. et al., Appellant.

Argued October 3, 1956. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Edmund B. Spaeth, Jr.,* with him *Frederick L. Fuges,* and *MacCoy, Evans & Lewis,* for appellant.

*Alexander F. Barbieri,* for appellee.

OPINION PER CURIAM, November 13, 1956:

That Christopher Johnson came to his death on February 2, 1953 from the accident in the course of his employment with the defendant is conceded, as it must be. The compensation authorities found that claimant on that date was his common law wife and on the finding made an award of benefits to her as his widow. Christine Murphy, a young granddaughter of decedent, had been a member of his household since her birth on September 18, 1952. He stood in loco parentis to the child and had supported her up to the time of his death. Accordingly an award was also made for the support of this dependent child. There can be no question as to the propriety of that part of the order. The validity of that award was not raised in the court below and cannot be considered here. Moreover the referee specifically found in favor of claimant as natural guardian of the child on sufficient uncontradicted evidence and the board affirmed the finding and the award. The controverted issue here is the right of claimant to benefits as decedent's widow. This right is dependent upon the validity of a com-

mon law marriage allegedly entered into by her with Christopher Johnson in March 1932.

Our approach to the question must be something more than mere tolerance of the common law of this State which recognizes the validity of such informal marriage contracts entered into without compliance with the statutory requirements of the Act of June 23, 1885, P. L. 146 and its amendments, 48 PS §1, et seq. But in this case where claimant asserts and relies on a common law contract the validity of the alleged marriage must be substantiated by "credible and competent testimony sufficient to satisfy a reasonable mind as adequate proof of a marriage at common law": *Buradus v. Gen. Cement Prod. Co.*, 159 Pa. Superior Ct. 501, 48 A. 2d 883.

Claimant had entered into a prior ceremonial marriage in Philadelphia with one James B. Dougherty in 1911. Six children were born to them. In February 1930 Dougherty disappeared from the home, with all of their current cash savings, under circumstances which charge him with desertion. As a means of supporting herself and her children claimant then took in boarders, among them, the decedent, Christopher Johnson. She did not divorce Dougherty and she never had notice of any divorce action brought by him. In the early part of February 1932, less than two years from the date of the desertion, Dougherty reappeared at her door and she testified that she "chased him." And when asked: ". . . why didn't you want to take him back?" she answered: "Well, I had Mr. Johnson; he claimed he would keep me and the children." Because of his need Dougherty then was taken in by his and the Claimant's daughter, Mary Ryan, and lived in her home in Philadelphia for about six months. Mary Ryan testified that after "He'd been living with

me a couple of weeks" he stated that he had divorced "my mother down south" and had married another woman. According to this witness Dougherty referred to divorce papers which he said he then had with him in his suitcase but they were not produced. Mary Ryan reported this conversation to her mother. According to claimant's testimony she entered into a common law marriage with Johnson about the 17th of March, 1932. She however did not fix the time when she learned of the above statement of Dougherty to Mary Ryan, with reference to March 17, 1932, whether before or after that date. The compensation authorities found that a valid marriage contract was then entered into, in words of present assent. From that date claimant and Johnson lived together as man and wife in Philadelphia and were so regarded up to the date of Johnson's death. Two children were born to them.

Dougherty's alleged statement to Mary Ryan reported to claimant, and admitted over the defendant's objection, was pure hearsay and was not evidence of its truth. Accordingly even if claimant relied on the hearsay assertion of Dougherty that he had been divorced from claimant, although it would have some bearing on the question of her innocence in entering into the informal marriage contract with decedent, yet it cannot be accepted as proof that she was competent to remarry. The appellant is right and the lower court was wrong in its conclusion that the widow's belief in itself, that the first marriage was dissolved, made the second marriage valid. A woman cannot at the same time legally have two husbands; " 'and one who has married once cannot lawfully marry again unless the first marriage has been dissolved by absolute divorce or by death. And if a second marriage is entered into, it is void ab initio' ": *Sharpe v. Federal Cleaning Co.,* 144 Pa. Superior Ct. 231, 238, 243, 19 A. 2d 509, 514.

The controlling issue here is whether the testimony as a whole, viewed in the light most favorable to claimant is sufficient to support the ultimate finding upon which the board rested its award (*Krchmar v. Oakland Beach Co.*, 155 Pa. Superior Ct. 430, 38 A. 2d 710) and claimant must prevail if the ultimate finding rests upon inferences fairly deducible from proven facts. *Paulin v. Williams & Co.*, 327 Pa. 579, 195 A. 40. In deciding that question we have not presumed to pass upon the credibility of witnesses. That was exclusively for the compensation authorities. There was a legal presumption that claimant entered into the alleged common law marriage innocently, i.e., relieved of the implication of the commission of a crime or an offense against good morals. And the question of law here presented is whether on this record this presumption is of sufficient strength to outweigh the other and conflicting presumption of the continued existence of the first marriage. Cf. *Fritsche v. O'Neill*, 147 Pa. Superior Ct. 153, 163, 24 A. 2d 131. In that case we held that the findings of the board were supported by competent evidence sufficient in law to support the award.

The appellant relies upon *Sharpe v. Federal Cleaning Co.*, supra. In that case Amanda Sharpe claimed as widow of the decedent, who died from accident in the course of his employment. She testified that they went through the form of a common law marriage in April 1933, and that they lived together as husband and wife until his death in 1937. The finding of the board, that a common law marriage between them took place (complying with the law in formal respects, as in the instant case) was supported by evidence and was binding upon us. However in the *Sharpe* case it was conclusively proved that the decedent and one Rachel Thomas had been married by a minister on

May 23, 1931. There was no testimony from which it could be inferred that Rachel Sharpe had died or had been divorced from Sharpe. The board nevertheless concluded "as a matter of law that upon the basis of the facts on the record a presumption arises that the first marriage to which decedent was a party, was dissolved either by divorce or by the death of decedent's wife, prior to his contracting the common law marriage with the present claimant." The board accordingly awarded compensation benefits to the claimant as the widow of the deceased employe. The lower court on appeal however entered judgment for the defendants holding that "As Claude E. Sharpe was incapable of contracting a valid marriage, Amanda Sharpe was never the lawful wife of the decedent." The testimony was that Rachel and Sharpe were living together up to within from four to fifteen months of the common law marriage. Rachel was seen by one witness in Philadelphia in the summer following the separation and by others in the early part of the winter in 1932. In commenting on the proofs, KELLER, P. J., in the opinion in that case said: "There was therefore not only no testimony in the record to support the findings which we have taken exception to as above, but the overwhelming and uncontradicted testimony was to the contrary, as before noted. In the face of such positive and uncontradicted testimony, the above findings of the referee and the board which are without any evidence to support them could not stand. There was therefore established a valid, ceremonial marriage between Claude Sharpe and Rachel Thomas on May 23, 1931, pursuant to which they lived together as man and wife until the winter of 1932, when they separated and Rachel left and went to Washington, D.C.; and the summer following the separation, which could not have been earlier than the summer of 1932, and might

have been the summer of 1933, Rachel stopped off and visited the sister and brother-in-law of her husband in Philadelphia en route to New York. The legal question before us is whether in these circumstances, the common law marriage which Claude Sharpe went through with the claimant in April 1933 was valid and legal. We agree with the court below that it was not."

Our affirmance of the judgment of the lower court in the *Sharpe* case rested on the conclusion that under all of the circumstances the presumption of innocence should not be permitted to overcome the presumption that a valid marriage once established continues until the contrary is proved. In that connection KELLER, P. J., said: "Something more than legal presumption was required to establish the fact that Claude E. Sharpe had been freed from his marital contract with Rachel Sharpe so that he could contract a new marriage with Amanda Sharpe." Here as in the *Sharpe* case and for like reasons, although the board found for claimant, the judgment must be reversed.

The most important circumstance in claimant's favor is the birth of two children, while living with Johnson. *Wile's Estate,* 6 Pa. Superior Ct. 435, 441. But even the laudable inclination of courts to legitimize children wherever possible cannot validate a marriage which is void ab initio. *Mays' Estate,* 141 Pa. Superior Ct. 479, 15 A. 2d 569.

The testimony in this case in its most favorable aspects cannot support the award.[1] Even if it be as-

---

[1] There is more than mere uncertainty in claimant's testimony as to whether she lived with Johnson in a meretricious relationship prior to the alleged exchange of vows in the common law contract. The compensation authorities did not make a finding on the subject. Claimant testified on cross-examination: "Q. And when Mr. Dougherty came back in 1932 were you already living with Mr. Johnson as husband and wife? A. Yes, sir." And fur-

sumed that claimant's common law marriage to Johnson in March 1932 took place subsequent to receipt of information by her that her first husband had secured a divorce and remarried, as found by the board, claimant's belief in the validity of her second marriage cannot under the circumstances be considered as a competent substitute for proof of the intervening divorce. The situation here presented is unlike that in *Wile's Estate,* supra, or in *Thewlis's Estate,* 217 Pa. 307, 66 A. 519 where there was a lapse of many years between the initial separation and the remarriage of one of the parties. Here claimant remarried less than two years after her first husband deserted her and only one month after the latter reappeared at her home. In the *Fritsche* case, supra, principally relied upon by appellee, the claimant thought her first husband was dead at the time of the second marriage; here as in the *Sharpe* case, supra, and in *Wilbert v. Com. Sec. Reserve Acc.,* 143 Pa. Superior Ct. 37, 17 A. 2d 732, claimant *knew* her first husband was alive when she entered into the common law contract with Johnson.

But of controlling importance in the instant case is the fact that the board's finding of the termination

ther, when questioned by the referee: "Q. You say you were living with Mr. Johnson when your husband returned in 1932? A. Yes, sir. Q. Living together as man and wife? A. Yes, sir; because he took us in that time." The lower court, although gratuitously and without authority, in law (*Krchmar v. Oakland Beach Co.,* 155 Pa. Superior Ct. 430, 38 A. 2d 710) found "that plaintiff and Christopher Johnson commenced living together prior to the receipt of the information with respect to the divorce and remarriage of plaintiff's first husband." The court nevertheless entered judgment on the award. In the absence of a finding by the board on the subject we have not considered a possible meretricious relationship in disposing of this appeal as an element to be considered as affecting the presumption of claimant's innocence in the common law alliance with Johnson.

of the claimant's first marriage by divorce rests on no more than the merest hearsay (admitted over objection and wholly uncorroborated) to support the presumption of innocence and legitimacy. Admittedly claimant took no steps whatever to verify her daughter's report of her first husband's divorce and remarriage. Cf. *Hudek v. United Eng. & Fdy. Co.*, 152 Pa. Superior Ct. 493, 33 A. 2d 41. Dougherty did not speak of a divorce when he presented himself at her door and she "chased him." Nor did she ever make inquiry although Dougherty was readily available for questioning during the ensuing six months period when he lived nearby with claimant's daughter. Furthermore aside from the incongruity of Dougherty returning to claimant, as he did, if in fact he had divorced her and remarried during the intervening period of less than two years, claimant admitted that she had never been served with any divorce papers. Accordingly on the basis of her testimony she and not Dougherty was the innocent spouse. Before a valid divorce may be obtained, good cause must be shown and legal formalities, including service of process, must be scrupulously observed; but in the intant case a presumption of the validity of claimant's second marriage must necessarily rest on the assumption of a "secret" divorce obtained by Dougherty upon perjured testimony.

If the presumption in favor of innocence and legality be permitted to prevail over the contra presumption of continuance of a valid marriage in the instant case, it must be solely on the basis that an unverified report of divorce obtained by a deserting spouse is the equivalent to proof of facts of such divorce—which of course it is not. All of the surrounding circumstances—the comparatively short separation of the parties before the return of the deserting spouse to the matrimonial domicile; his summary ejection therefrom by

claimant wife; her entering into a common law marriage with another only a month later with no effort whatever on her part to verify the hearsay report that she was free to remarry, despite the availability of her first husband nearby—negate the presence of sufficient competent evidence in this record to sustain the award in favor of wife claimant.

There is no legal basis of an alleged subsequent renewal of vows which could validate the common law marriage. As stated in the opinion of the lower court: "The only testimony with respect to this matter is that of plaintiff's daughter, Mrs. Mary Ryan, to the effect that about ten years subsequent to the original common law ceremony, in March of 1932, Christopher Johnson told her that he had taken her mother as his wife. From this evidence no inference can be drawn that a new common law ceremony had taken place. At best, this evidence is only corroborative of the existence of the original common law ceremony." In other words, an assertion by the parties that they already are married is not the equivalent of proof of a new common law marriage and cannot vitalize an existing marriage contract which was void ab initio.

Judgment for claimant as widow of decedent, reversed, and here entered for defendant.