Leroy Roofing Company and Pennsylvania Manufacturers Association Insurance Company, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and E. Marie Shultz, Widow of John F. Shultz, Deceased, Appellees.

Argued September 11, 1974, before Judges KRAMER, MENCER and BLATT, sitting as a panel of three.

*John F. McElvenny,* with him *John Havas* and *Shearer, Mette, Hoerner & Woodside,* for appellants.

*William H. Nast, Jr.,* with him *L. V. Jackson* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE BLATT, October 29, 1974:

On June 26, 1972, while in the course of his employment for the Leroy Roofing Company (employer), John Franklin Shultz (decedent) fell to his death from a two and one-half story building. His alleged wife, E. Marie Shultz (claimant), survived him along with their four children, three of whom were under the age of eighteen at the time of his death. The claimant filed for death benefits on behalf of herself and the three minor children, and both the referee and the Workmen's Compensation Appeal Board (Board), on review, granted such benefits. The employer appealed to this Court for a review of the Board's decision.

In a workmen's compensation case review, we are limited to a determination of whether constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence. *Foster Wheeler Corp. v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. 45, 317 A. 2d 922 (1974).

The company first contends that the claimant was not lawfully married to the decedent and therefore was not entitled to widow's death benefits under the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1 et seq. The record reveals that, on February 9, 1952, after apparently complying with all legal prerequisites, the claimant in good faith engaged in a traditional marriage ceremony with the decedent. Unknown to her, however, the decedent was already married to another woman, Catherine Gabriel. His marriage to the claimant, therefore, was void ab initio. *Johnson v. J. H. Terry & Co.,* 182 Pa. Superior Ct. 258, 126 A. 2d 793 (1956). On September 8, 1953, the decedent's earlier marriage terminated in divorce, and the impediment to the creation of a valid marital union between the claimant and the decedent was then removed. The claimant and the decedent, however, did not enter into a second marriage ceremony. The record reveals testimony sufficient to support cohabitation and reputation as conclusive that the claimant and decedent held themselves out as husband and wife, one of the necessary incidents to the creation of a common law marriage. *Brown v. Atlantic and Gulf Stevedores, Inc.,* 2 Pa. Commonwealth Ct. 481, 279 A. 2d 372 (1971). On the other hand, the testimony appears to negate the utterance, subsequent to the divorce, of words evidencing present intent to enter the marriage agreement, another incident necessary to the creation of a common law marriage. *David v. Bellevue Locust Garage,* 12 Pa. Commonwealth Ct. 602, 317 A.

2d 341 (1974). Although, therefore, not all of the requisites for a common law marriage between the claimant and the decedent may be found here, Section 17 of The Marriage Law, Act of August 22, 1953, P. L. 1344, *as amended*, 48 P.S. §1-17, would seem to apply to validate this relationship. It provides: "If a person, during a life time of a husband or a wife, with whom a marriage is in force, enters into a subsequent marriage pursuant to the requirements of this act, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage was entered into by one or both of the parties in good faith . . . without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by . . . divorce, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and immediately after the removal of such impediment."

The employer argues that this provision may not apply, because it became effective after the impediment to the instant marriage was removed and cannot be retroactively applied.[1] Of course, "no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Statutory Construction Act of 1972, 1 Pa. S. §1926. Here, however, it would seem clear that the public policy favoring the validity of good faith *ceremonial* marriages motivated the legislative adoption of this marriage validating provision. *Commonwealth ex rel. Alexander v. Alexander*, 445 Pa. 406, 289 A. 2d 83 (1971). It would seem equally clear that the claimant's innocent cohabitation with the decedent and their continuous recognition of a marriage relationship long after the impediment to a valid marriage was removed would certainly bring this

---

[1] The statute became effective January 1, 1954. The Marriage Law, Act of August 22, 1953, P. L. 1344, *as amended*, 48 P.S. §1-25.

case within the scope of the later legislative intention, *Helsel Estate,* 51 Del. Co. 369 (1963). We believe, therefore, that it is not necessary for us to place a retroactive construction on the act to achieve the General Assembly's intended result in this case. We may simply apply the act to a condition which existed on the date when the act became effective, even though this condition resulted from events which occurred prior to the act's effective date. *Creighan v. Pittsburgh,* 389 Pa. 569, 132 A. 2d 867 (1957). On the date the act became effective, January 1, 1954, the relationship between the claimant and the decedent met the conditions necessary for validation by the act. That being so, the act operates, as of January 1, 1954, upon these conditions and effectively validates the claimant's marriage to the decedent at the time of the original ceremony in February 1952. At the time of the decedent's death, therefore, the claimant was his lawful wife and is entitled to death benefits.

The employer next alleges error in the formula by which the Board computed the claimant's benefits. After November 6, 1975, the date when one of the claimant's daughters became eighteen years of age, leaving her then with only one minor child to support, the Board awarded benefits of $94.00 per week, and further provided that benefits should continue at the same rate for the duration of her life after December 1, 1981, when she will have no minor dependents. It is undisputed that, at the time of the decedent's death, his actual average weekly wage was $298.00 per week and that the statewide average weekly wage was then $141.00 per week. It is also undisputed that the amount of compensation payable is determined by Section 307 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §§561, 581, which provides that:

"In case of death, compensation shall be computed on the following basis, and distributed to the following persons:

. . . .

"(2) To the widow or widower, if there be no children, fifty-one percentum of wages, but not in excess of sixty-six and two-thirds percentum of the statewide average weekly wage.

"(3) To the widow or widower, if there be one child, sixty percentum of wages, but not in excess of sixty-six and two-thirds percentum of the statewide average weekly wage." 77 P.S. §561.

However, the third paragraph of Subsection (7) provides:

"(7) . . .

"The wages upon which death compensation shall be based, shall not in any case be taken to exceed the statewide average weekly wage nor be less than forty percentum of the statewide average weekly wage." 77 P.S. §581.

The employer's position is that, by reading all parts of Section 307 together, the maximum award payable to this claimant during the period from November 6, 1975, when she will have one minor child to support, to December 1, 1981, when that child becomes eighteen, would be sixty percent of wages. This, as limited by Subsection 7, would mean sixty percent of $141.00, the statewide average weekly wage, or a total of $84.60. For the period after December 1, 1981, when the claimant becomes a widow with no minor children to support, the employer argues that she would be entitled to receive fifty-one percent of wages, which as limited by Subsection 7 would mean fifty-one percent of $141.00, the statewide average weekly wage, or a total of $71.90.

This construction, as suggested by the employer, ignores the plain meaning of Section 307(2) and (3). If the ceiling for wages contained in Subsection 7 is to

apply to Subsections 2 and 3, then the specific maximum limit mentioned in Subsections 2 and 3 is rendered superfluous. In other words, if fifty-one percent and sixty percent of statewide average weekly wages are used as maximums, then obviously sixty-six and two-thirds percent of the same number, will never be reached. That is, when the decedent's wages exceed the statewide average weekly wage, as is the case here, Section 307(2), for example, would have to be construed as follows: To the widow or widower, if there be no children, fifty-one percentum of the statewide average weekly wage, but not in excess of sixty-six and two-thirds percentum of the statewide average weekly wage.

The General Assembly would not have intended the specific maximum limitations expressed in each subsection to be rendered total surplusage, never to have any application. Statutory Construction Act of 1972, 1 Pa. S. §1922(1). We must find, therefore, that the specific maximum limitation of sixty-six and two-thirds percent of the statewide weekly wage as provided in Sections 307(2) and 307(3) controls. The Board, therefore, awarded the proper compensation benefit of $94.00 per week (sixty-six and two-thirds percent of $141.00) for the period running through December 1, 1981, when the claimant will be supporting one minor child, and the same amount thereafter when the claimant will be supporting no minor children.

Because we find no errors in the Board's computation of benefits nor in its finding that the claimant is the lawful widow of the decedent, we issue the following

### Order

Now, October 29, 1974, the Workmen's Compensation Appeal Board's affirmance of the referee's order relative to the claim of E. Marie Shultz is hereby affirmed. Accordingly, it is ordered that judgment be entered in favor of E. Marie Shultz and against Leroy

Roofing Company in the amount of $94.00 per week from November 6, 1975 to December 1, 1981, and in the amount of $94.00 per week from December 1, 1981 and continuing for the duration of her widowhood, all within the terms and limits of the Pennsylvania Workmen's Compensation Act.