

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-1994

# Huff v. US Office of Personnel Mgmt, et al.

Precedential or Non-Precedential:

Docket 93-1706

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Huff v. US Office of Personnel Mgmt, et al." (1994). *1994 Decisions.* Paper 181.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/181

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 93-1706

————————

CLIFFORD IRENE HUFF

v.

DIRECTOR, UNITED STATES OFFICE OF PERSONNEL
MANAGEMENT; ETHEL R. LEECAN

ETHEL R. LEECAN,
                    Appellant

————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 92-04978)

————————

Submitted Under Third Circuit LAR 34.1(a)
February 17, 1994

PRESENT:  BECKER, HUTCHINSON and COWEN, <u>Circuit Judges</u>

(Filed   November 9,  1994)

————————

Debra A. Washington, Esquire
First Floor
340 South Sixteenth Street
Philadelphia, PA     19102
        Attorneys for Appellant

Stephen L. Axelrod, Esquire
Suite 1600
1845 Walnut Street
Philadelphia, PA   19103
        Attorneys for Appellee

---

OPINION OF THE COURT

---

HUTCHINSON, <u>Circuit Judge</u>.


Appellant, Ethel R. Leecan ("Mrs. Leecan"), appeals a declaratory judgment of the United States District Court for the Eastern District of Pennsylvania in favor of appellee, Clifford Irene Huff ("Huff"). This district court's judgment declared that Huff was the legal spouse of William N. Leecan ("Mr. Leecan" or "the decedent") at the time of his death. Both women claimed entitlement to decedent's federal employee survivor benefits as his surviving spouse. This case arose when the Director of the United States Office of Personnel Management ("USOPM") requested both claimants to file this action asking the district court to judicially determine who was Mr. Leecan's spouse at the time of his death.

For purposes of determining who is a spouse entitled to survivors' benefits, USOPM looks to applicable state law. It will apply the law of the state with the most significant interest in the marital status of the employee. The only two states whose law could apply to the dispute between Mrs. Leecan and Huff are Pennsylvania and Texas. We believe that Pennsylvania law would control in this case, as it has the greater interest in the marital status of the now deceased government employee. The district court did not do a choice of laws analysis but concluded instead that the outcome would be the

same under either Texas or Pennsylvania law.  It then looked to Pennsylvania case law and held that Huff was the legal spouse of the decedent at the time of Mr. Leecan's death absent proof of divorce or annulment of his marriage to her.

We think that the district court erred in analyzing Pennsylvania law and concluding that Pennsylvania has an absolutely inflexible rule that a second marriage is always invalid in the absence of strict proof of a divorce decree or annulment of the first marriage.  The Supreme Court of Pennsylvania has specifically instructed courts applying that state's domestic relations law to perform a balancing test by weighing the evidence in the record to determine which of two presumptions, one in favor of continuation of the first marriage and the other in favor of the validity of the second marriage, is more easily sustained by the evidence.  Concluding that the second presumption could never apply in the absence of strict formal proof of termination of the first marriage, the district court failed to do this.  Therefore, we will remand this case to the district court so that it can properly balance the presumption in favor of the first marriage against the one favoring the second.  In adjusting that balance, we think no mechanical rule will suffice.  Instead, we think the court should consider the conduct of both parties and their respective contributions to the stability of the family each chose to support or deny in light of the value our society attributes to traditional families and evolving conditions of family life in this nation.  On remand, we also think the district court should

make an express finding as to when and how Huff first learned of the decedent's marriage to Mrs. Leecan and the reasons for her lack of curiosity for twenty-eight years about the man she now claims as her husband.

## I.

Huff and the decedent were married in 1956 in Victoria County, Texas.[1]  Shortly thereafter, they moved to Philadelphia. They had no children together.  In 1961, they separated and Huff returned to Victoria County, Texas.  Huff continued her residence there until 1964 when she moved to Houston in Harris County, Texas.  The decedent continued to live in Philadelphia.  In 1962, Huff commenced divorce proceedings against the decedent in Victoria County, Texas.  The action was dismissed for lack of prosecution in 1964.  A record search of Victoria and Harris Counties, Texas, and Philadelphia, Pennsylvania produced no record of divorce or annulment.[2]

---

[1].  Mrs. Leecan argues that Huff's marriage to the decedent was invalid because Huff was only seventeen years of age at the time. This impediment renders the marriage merely voidable, not void. Because Huff did not, at any time, disclose this impediment to the district court and because a declaratory judgment is an equitable remedy, Mrs. Leecan also argues that Huff should be precluded from recovery because she did not come into court with clean hands.  Huff and the decedent continued to live together as husband and wife after Huff attained the age of majority, and no action for annulment was commenced within sixty days of the marriage ceremony.  See 23 Pa. Cons. Stat. Ann. §§ 3303, 3305(a)(2) (1991).  Therefore, we reject these arguments.

[2].  Texas law requires a plaintiff in a divorce action to have resided in the county where the action was filed for six months prior to institution of the action. See Tex. Fam. Code Ann.

Huff later took up residence with Thomas Bennett and had three children with him, all bearing the surname Bennett. On the children's birth certificates, Huff's name is given as Irene Bennett. Huff never married Bennett.

Following his separation from Huff, the decedent was hired by the United States Post Office in Philadelphia. His employment there entitled his spouse to federal survivor annuity benefits. On November 8, 1967, the decedent completed his death benefit form naming Ethel Leecan as his wife. Three days later, on November 11, 1967, the decedent and Ethel Leecan, after obtaining a Pennsylvania marriage license, were married.[3] The decedent, in applying for the marriage license, declared that he had never been married before. Following their marriage, the decedent and Mrs. Leecan held themselves out as husband and wife, bought property together and had two children together.[4]

Decedent died in an automobile accident in June of

(..continued)
§ 3.21 (West 1994). Huff appears to have resided only in Harris and Victoria Counties, Texas.

][3]. Decedent's designation of "Ethel Leecan" as his beneficiary would be ineffective if she is not his wife. Only spouses and certain unmarried children are entitled to death benefits under the Federal Employees Health Benefit's Program. See 5 U.S.C.A. § 8341 (West Supp. 1994). Indeed, the Death Benefits Registration Form in which decedent listed his spouse as "Ethel R." identified the family member eligible for death benefits. See Appendix ("App.") at Doc. 14.

[4]. The ages of the decedent's children do not appear in the record. If we assume that any children born to Mr. and Mrs. Leecan were born after the date of Mr. Leecan's attempt to contract a valid ceremonial marriage to Mrs. Leecan in 1967 and the decedent's death in 1971, these children would today be between the ages of 23 and 27.

1971.  Later that same year Mrs. Leecan began collecting survivors' benefits as his spouse.  Not until about eighteen years later, in 1989, did Huff petition the USOPM to award her any survivors' benefits due Mr. Leecan's spouse.[5]  Thus, Huff and Mrs. Leecan now both claim entitlement to benefits as the legal spouse decedent at the time of his death.  Initially, USOPM awarded Huff a retroactive payment of $58,819.20 and ordered Mrs. Leecan to repay the benefits she had received over the eighteen years that preceded Huff's petition, but USOPM reversed this decision after deciding that Huff had waited too long to challenge decedent's marriage to Mrs. Leecan and ordered Huff to repay the retroactive award.

At the urging of USOPM, both parties filed an action in the district court seeking a declaratory judgment determining who was the legal spouse of the decedent under applicable state law at the time of his death.  USOPM suspended all benefit payments and efforts to collect repayments pending the district court's decision.

Huff filed a motion for summary judgment which the district court denied, holding that there was sufficient evidence at the summary judgment stage to overcome Pennsylvania's presumption of favoring the continued existence of the first marriage.  This evidence included testimony that the decedent believed he had been divorced, that he told others he had

---

[5].  Applications for survivor annuities may be filed within thirty years of the death of an employee.  See 5 U.S.C.A. § 8345(i)(2) (1980).

obtained a divorce from Huff, that he had children with Mrs. Leecan, and that Huff never attempted to contact the decedent until eighteen years after the decedent's death and almost twenty-eight years after her separation from him.

Later, at a bench trial, other evidence showed the decedent told Mrs. Leecan he had been married previously but that this marriage had been annulled and decedent's half-brother also testified that the decedent had told him before he married Mrs. Leecan that his marriage to Huff had been annulled. He also testified that Mr. Leecan had hosted a party to celebrate his annulment.

Unfortunately for Mrs. Leecan, the district court did not credit this testimony, but found instead there was no credible evidence that the decedent and Huff were ever divorced or that their marriage was ever annulled. The district court did not expressly find that Huff lacked knowledge of Mr. Leecan's subsequent marriage to Mrs. Leecan but did find, "she had not had any contact with him or any knowledge about him since prior to his death in 1971." Appendix ("App.") at Exhibit 4, p.6 (District Court oral op.).

Mrs. Leecan did not raise any conflict of law issues before the district court, nor did she or Mrs. Huff object to the district court's application of Pennsylvania law to the question of who was Mr. Leecan's spouse at the time of his death. The district court, without deciding whether Texas or Pennsylvania law applied, concluded that the outcome would have been the same under the law of either state.

Because there was no evidence that the decedent and Huff were ever divorced, or that their marriage had been annulled, the district court held that Mr. Leecan's second marriage to Ethel Leecan was void ab initio. It went on to conclude that Huff was still legally married to the decedent at the time of his death but noted, "[t]his result may seem inequitable under the facts of this case." Id. at Exhibit 4, p.7.

Mrs. Leecan filed a timely notice of appeal.[6]

---

[6]. The district court had subject matter jurisdiction under 28 U.S.C.A. § 1332 because of diversity of citizenship. We have appellate jurisdiction over Leecan's appeal from the district court's final order granting the declaratory judgment under 28 U.S.C.A. § 1291. We exercise plenary review over the district court's decision that no conflict of laws analysis was required and that under the law of Pennsylvania Huff was the legal spouse of the decedent at the time of his death. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994). Any subsidiary factual findings, however, are subject to the clearly erroneous standard of review. Id.

II.

In deciding who is entitled to federal survivor benefits, USOPM looks to state common law to define marriage and to determine who is the legal widow of the decedent:

> "Marriage" means a marriage recognized in law or equity under the whole of the jurisdiction with the most significant interest in the marital status of the employee, Member or retiree unless the law of that jurisdiction is contrary to the public policy of the United States.  If a jurisdiction would recognize more than one marriage in law or equity, the Office of Personnel Management (OPM) will recognize only one marriage, but will defer to the local court to determine which marriage should be recognized.

5 C.F.R. § 831.603 (1994) (emphasis added).  The only question before us on appeal of this declaratory judgment action is who was the legal spouse of William Leecan when he died in 1971.

In deciding this issue, we agree with the district court that it is unnecessary to perform a conflicts analysis as the result is the same under either Texas or Pennsylvania law. Compare In re Estate of Watt, 185 A.2d 781, 785-86 (Pa. 1962) (discussed infra) with Parson v. Parson, 387 S.W.2d 764, 766 (Tex. Civ. App. 1965) (if previous marriage has not been terminated by divorce, annulment or death of prior spouse, party does not have capacity to enter into second marriage and any attempted second marriage is void ab initio); Hudspeth v. Hudspeth, 198 S.W.2d 768, 769 (Tex. Civ. App. 1946) (Texas law presumes validity of second marriage and that presumption prevails until it is rebutted "by evidence which negatives the

effective operation of every possible means by which a dissolution of the prior marriage could have taken place"); see also 23 Pa. Cons. Stat. Ann. § 1702 (1991); Tex. Fam. Code Ann. § 2.22 (West 1994).

In any event, to the extent that there are any material differences in the law of Texas and Pennsylvania, we believe standard conflicts analysis points to Pennsylvania law. Pennsylvania had the "most significant interest in the marital status of the employee." 5 C.F.R. § 831.603 (1994) (emphasis added). Although Huff and the decedent were married in Texas, they moved to Pennsylvania shortly after their marriage in 1956 and they resided here until their separation in 1961. Mrs. Leecan's marriage to the decedent occurred in Pennsylvania and they resided there until decedent died. In addition, the decedent's federal employment was in Pennsylvania. The only contacts with Texas are Huff's marriage to Leecan and Huff's longtime residence there. See Headon v. Pope & Talbot, Inc., 252 F.2d 739, 742-43 (3d Cir. 1958) (giving great weight to forum state's presumptions where parties lived in forum during most of marital relationship).

Pennsylvania law has two conflicting presumptions, both of which apply in this case. The first presumption is that a valid first marriage continues until it is proven to be dissolved by death, divorce or annulment. Watt, 185 A.2d at 785. The second presumes the innocence and validity of a second marriage. Id. In case a conflict between these presumptions arises, we are advised "that presumption should yield which from the evidence

and inferences therefrom render it the least probable to sustain." Id. at 786.[7]

The Supreme Court of Pennsylvania considered the impact of these two presumptions in In re Estate of Watt. In Watt, in upholding the first marriage, the supreme court stated that any subsequent marriage is void unless the first marriage is dissolved in some manner. Id. at 785. It went on to say that even assuming the second wife "acted in the utmost of good faith and in reliance upon [a fraudulent] decree of divorce, per se such good faith and reliance on her part would not breathe vitality into her marriage to decedent unless, in fact, decedent had the legal capacity to enter into such a marriage." Id. Therefore, to overcome the first presumption, there must be proof of facts and circumstances that make it apparent that the first marriage has been dissolved or the spouse has died. Id.; see In re Estate of Henry, 353 A.2d 812, 813-15 (Pa. 1976) (because there was no evidence of divorce between deceased and his first wife or that deceased's first wife died prior to deceased's second marriage, first marriage was valid unless during trial, on remand from grant of summary judgment, second wife could prove that first marriage had never been consummated and decedent had never lived together with first wife, as she alleged).

---

[7]. Texas law also presumes the validity of the second marriage, but that presumption is destroyed by evidence which negates the effective operation of every possible means by which dissolution of the prior marriage could have taken place. See Hudspeth, 198 S.W.2d at 770 (citations omitted).

At the same time, the supreme court recognized that it had to reconcile this presumption in favor of the continuing validity of the first marriage with a competing presumption: "the presumption of innocence in contracting a second marriage as well as the presumption of the validity of a second marriage, the former furnishing the rationale for the latter." Watt, 185 A.2d at 785. "Underlying [these latter] presumptions is the theory that parties to the second marriage did so innocently and without criminal or wrongful purpose or intent and that the law will infer matrimony rather than concubinage." Id. Where children have been born of the second marriage, as in Mrs. Leecan's case, the presumption of legitimacy considerably strengthens the presumption of the validity of the second marriage. Id. at 785 n.6. The birth of children is not sufficient, in itself, however, to rebut the presumption in favor of the continuing validity of the first marriage. See In re Estate of Henry, 353 A.2d at 814; see also Johnson v. J.H. Terry & Co., 126 A.2d 793, 797 (Pa. Super. 1956), aff'd, 133 A.2d 234 (Pa. 1957). A long period of absence or desertion, as well as the fact that the first spouse may have also remarried, and proof that the decedent recognized the validity of the second marriage, may also support the second presumption. See In re Estate of D'Ippolito, 218 A.2d 224, 225 (Pa. 1966) (where twenty-four year period elapsed between time decedent was deserted by her first husband and her second marriage, and where whereabouts of first husband continued to be unknown and decedent had attempted to locate him prior to her second marriage, continuance of decedent's first marriage, so

as to defeat second husband's right to decedent's estate, was not established).

In deciding how to balance these conflicting presumptions the Pennsylvania Supreme Court, in Watt, cited Madison v. Lewis, 30 A.2d 357, 360 (Pa. Super. 1943), with approval.

> "When a valid marriage is proven the law presumes that it continues until the death of one of the parties (actual or presumptive after seven years), or a divorce is shown. Without either of these appearing if one of the parties marries again, while another presumption arises that it is innocent, that alone is not sufficient to overcome the previously existing presumption of the continued validity of the first marriage. The second presumption does not of itself destroy the first but requires some proof of facts and circumstances to be given the effect of overcoming the first; as for instance, the long lapse of time during which the other party may be presumed to have died, the question of legitimacy of a child of the second marriage, the fact that the other spouse had likewise remarried, proof that the decedent, whose heirs are attacking the second marriage, had himself recognized the validity of it."

Watt, 185 A.2d at 785-86 (quoting Madison, 30 A.2d at 360) (footnote & citations omitted); cf. In re Estate of Bruce, 538 A.2d 923, 923 (Pa. Super. 1988).  In our case there is evidence that the decedent himself had recognized the second marriage as valid, two children were born of the second marriage, there was a long lapse of time, approximately twenty-eight years, during which the decedent and Huff had no contact with one another, and

Huff lived with another man, used his surname and had children
with him.

> The <u>Watt</u> court continued:
> From the presumption in favor of the validity
> of the second marriage and the presumption of
> innocence upon the part of the parties to
> that marriage there follows, as a corollary,
> another presumption i. e. that either death
> or divorce had terminated the prior marriage,
> and he who claims the invalidity of the
> second marriage must over come that . . .
> presumption by proof of some nature.  The
> presumption that a first marriage has been
> terminated by death or divorce is neither
> absolute nor inflexible and each case must be
> resolved on the basis of its own facts and
> circumstances and such inferences as fairly
> arise and can be reasonably drawn from them.

<u>Watt</u>, 185 A.2d at 786 (citations omitted).

We believe the real thrust of the several presumptions
is to place the burden of proving the invalidity of the second
marriage upon the person who claims such invalidity and we think
that requires proof of some nature that the first marriage was
not dissolved by death or divorce at the time of the second
marriage.  <u>Id.</u> at 785–86; <u>but</u> <u>see</u> <u>Headen v. Pope & Talbot, Inc.</u>,
252 F.2d at 741 ("The validity of the marriage in question [the
second marriage] may be sustained only if there is proof of the
dissolution of [the first marriage]."); <u>D'Ippolito</u>, 218 A.2d at
225 ("[T]he burden remains upon the party supporting the validity
of the subsequent marriage to produce such facts as will shift
the burden of proof back to the party supporting the validity of
the prior marriage.").  While Pennsylvania cases exhibit

considerable confusion about who has the burden of proving the termination of the first marriage and the strength of the evidence that is needed to establish that fact, they indicate to us the absence of an entirely mechanical rule and, under the circumstances of this case, we believe that Huff should bear the burden of proving the first marriage was not dissolved at the time of the second marriage.

As the district court recognized in denying Huff's motion for summary judgment, there is evidence which could overcome the presumption of the continued existence of the first marriage. This evidence includes the fact that the decedent advised others that he had obtained a divorce from Huff, Mrs. Leecan and the decedent had two children together in the second marriage and Huff bore decedent no children. Huff used the surname of her children's father, a man with whom she lived, in her correspondence with USOPM and on the birth certificates of her children, and Huff never attempted to contact the decedent until eighteen years after his death and twenty-eight years after their separation. The district court nevertheless declined to balance the conflicting presumptions but instead held if there is no divorce decree or annulment of the first marriage, the second is automatically void <u>ab</u> <u>initio</u>. We think this reading of Pennsylvania law renders the second presumption meaningless; no weighing of the evidence is even necessary because a second marriage automatically becomes void <u>ab</u> <u>initio</u> unless a decree of divorce or annulment is produced. This seems to us contrary to the state supreme court's analysis in <u>Watt</u>. Because there was

evidence supporting each presumption, we think that the district court should have weighed one against the other in light of the social value of each claimant's conduct and the contribution of each to the family which Mr. Leecan wanted to benefit with funds which he treated as his own after Mrs. Huff returned to Texas and entered into a relationship with another man that produced a separate family which Mr. Leecan not only had no contact with, but knew nothing about. Rather than weighing the competing presumptions favoring Mr. Leecan's first and second marriages, as suggested by Watt, the district court ended its analysis with a rule of law that no divorce or termination of the first marriage had been proven and therefore the second marriage was void ab initio. We do not criticize the district court for doing so because there are indeed indications in Pennsylvania case law that such a strict rule exists, and we recognize the strong need for certainty and definiteness in the rules governing a status so important to society's well being as marriage. Nevertheless, it seems to us that inflexible application of a rule requiring, without exception, that the first marriage be shown conclusively to terminate before the second can be recognized would make the competing presumption in favor of the validity of the second marriage meaningless. Because that presumption also has strong underpinnings in desirable social policy, we do not think Pennsylvania would totally ignore it under the circumstances that this case presents.

Moreover, the district court may have erred in concluding that Huff had conclusively demonstrated that no

divorce or annulment existed based only upon a search of the court records in Victoria and Harris Counties, Texas and Philadelphia, Pennsylvania. In Pennsylvania, there is no six-month residency requirement as in Texas and the requirement of venue may be waived by entry of a general appearance by defendant, see Chasman v. Chasman, 53 A.2d 876 (Pa. Super. 1947); see also Shields v. Folsom, 153 F. Supp. 733 (E.D. Pa. 1957). This record does not show that all counties in Pennsylvania were searched to establish conclusively that there was no divorce or annulment here. Thus, although the evidence shows that Huff resided only in Philadelphia, Pennsylvania and Victoria and Harris Counties, Texas, we are not convinced that the record search Huff offered was broad enough to be conclusive.

Finally, even assuming Huff can establish on remand that no divorce or annulment exists and the district court concludes the presumptions balance in her favor, we believe it also erred in failing to make a finding as to when Huff learned of the decedent's marriage to Mrs. Leecan. California and Texas law persuasively support the equitable principles that Watt seems to foreshadow and later Pennsylvania law does not preclude. USOPM decisions concerning entitlement use similar principles. Thus, USOPM may bar the first wife from asserting a claim as the legal surviving spouse where she unreasonably delayed taking legal action to challenge the validity of her husband's later marriage within a reasonable time after gaining knowledge of it. See Jacobs v. Office of Personnel Management, 13 M.S.P.R. 23, 26 (1982) (citing United States v. George-Pacific Co., 421 F.2d 92,

96 (9th Cir. 1970); Brown v. Brown, 79 Cal. Rptr. 257 (Cal. App. 1969), modified, 82 Cal. Rptr. 238 (Cal App. 1969)); see also Simpson v. Simpson, 380 S.W.2d 855, 859-60 (Tex. Civ. App. 1964). We agree that Huff would not be barred from challenging the validity of the second marriage if she knew only that the decedent "had a woman." Brief of Appellant at 11. This is clearly insufficient under Watt. See Watt, 185 A.2d at 790 n.9. The district court, however, failed to make any finding on when Huff learned of decedent's second marriage. For all these reasons, we conclude this case should be remanded to the district court for further proceedings.[8]

### III.

For the foregoing reasons we will vacate the order of the district court and remand for further proceedings consistent with this opinion.

---

[8]. We note that the district court was itself troubled by the length of time between the decedent's death and Huff's claim of entitlement to the survivor benefits as well as the inequitable result if Mrs. Leecan were now ordered to repay the $58,819.20 she was previously awarded through no fault or bad faith on her part. Thus, the equitable doctrines of laches and equitable estoppel, as well as waiver of overpayment under OPM regulations, may be applicable in fashioning a final benefits award even if the district court concludes after balancing the conflicting presumptions in light of all the evidence that Mrs. Huff has established a continuing validity of the marriage to Mr. Leecan and the consequent invalidity of his second marriage to Mrs. Leecan.